Mark Bettilyon (4798)
Jed H. Hansen (10679)
Ian Wang (15035)
**THORPE NORTH & WESTERN LLP**
175 S. Main St., Suite 900
Salt Lake City, UT 84111
Telephone: (801) 566-6633
Facsimile: (801) 566-0750
E-mail: mark.bettilyon@tnw.com
         hansen@tnw.com
         ian.wang@tnw.com

*Attorneys for Biomerics, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIOMERICS, LLC, a Utah limited liability company, | Case No.: 2:17-cv-01059-TS |
| Plaintiff | **MOTION FOR ENTRY OF DEFAULT JUDGMENT** |
| v. | |
| NIMBUS CONCEPTS, LLC, a Delaware limited liability company, | Judge Ted Stewart |
| Defendant. | |

Plaintiff Biomerics, LLC ("Biomerics"), pursuant to Fed. R. Civ. P. 55(b), moves this Court for entry of judgment against Defendant Nimbus Concepts, LLC ("Nimbus").

## FACTUAL BACKGROUND

On or about June 1, 2012, Biomerics and Nimbus entered into a Development and Supply Agreement ("D&S Contract") to develop an Electrosurgical Radiofrequency Multi-Tined Expandable Electrode. *See* Declaration of Travis Sessions, attached as Exhibit A ¶ 2, Exhibit 1;

Complaint (Dkt. No. 1) ¶ 8.  Pursuant to the D&S Contract, Biomerics developed the electrode device and procured regulatory approval of the device at great expense and cost to Biomerics. *See* Complaint ¶ 9.

Under the D&S Contract, Biomerics regularly received requests for work from Nimbus and provided quotes to provide the requested work.  *Id.* ¶ 10.  Nimbus paid many of these invoices Biomerics sent to it for work performed.  *Id.*  In 2016, Biomerics conducted work, pursuant to the D&S Contract, and provided Nimbus' customer RS Medical with numerous electrodes.  *Id.* ¶ 11.  These invoices were provided to Nimbus.  *Id.*; Declaration of Travis Sessions ¶ 5, Exhibit 2.  However neither RS Medical nor Nimbus ever paid, or disputed, the invoices.  *See* Complaint ¶ 11; Declaration of Travis Sessions ¶ 6.

In the middle of 2016, Nimbus began to suffer as a company.  Complaint ¶ 12.  Many employees left Nimbus and sales of the electrode began to suffer.  *Id.*  Accordingly, effective October 1, 2016, Biomerics and Nimbus entered into a License to Sell Agreement where Biomerics was granted a 90-day license to sell the electrode in order to sustain sales while Biomerics and Nimbus negotiated the sale of Nimbus to Biomerics.  *See* Declaration of Travis Sessions ¶ 8, Exhibit 4; Complaint ¶ 13.  However, due to disagreements among Nimbus' Board of Directors, the sale was not negotiated by the expiration of the License to Sell Agreement. Complaint ¶ 14.

As such, effective January 1, 2017, Biomerics and Nimbus entered into a Second License to Sell Agreement.  *Id.* ¶ 15, Exhibit C.  Pursuant to this Agreement, Nimbus granted Biomerics the right to worldwide distribution of the electrode while negotiations continued.  *Id.*  Ultimately, Nimbus agreed to sell Biomerics its assets for approximately $1.4 million with any debts Nimbus

owed to Biomerics deducted from this amount. *Id.* However, this sale has never been finalized. Biomerics manufactured and sold, and continues to manufacture and sell, the electrode in good faith pursuant to the License to Sell Agreements. *Id.* ¶ 16.

As part of the efforts to negotiate the sale of Nimbus assets to Biomerics, Biomerics agreed to advance funds to Nimbus to cover certain legal expenses during the negotiations. *See id.* ¶¶ 17-18. Specifically, Nimbus hired outside counsel to help negotiate the sale of Nimbus assets to Biomerics. *Id.* ¶ 17. Biomerics agreed to advance Nimbus funds to cover these legal fees, with the understanding that these amounts would be paid back to Biomerics. *Id.* ¶ 17; Declaration of Travis Sessions ¶¶ 19-20, Exhibits 5-6. Additionally, Biomerics agreed to advance Nimbus funds to cover certain legal and other fees required to maintain the value of Nimbus' intellectual property during the negotiations. *See* Complaint ¶ 18. Again, Biomerics advanced these fees with the understanding that these amounts would be paid back to Biomerics. *Id.*; Declaration of Travis Sessions ¶ 21, Exhibits 7-10.

Biomerics has sent numerous notices and invoices to Nimbus requesting Nimbus pay the above amounts and fees owed to Biomerics. *Id.* ¶ 19. Further, Biomerics notified Nimbus that Biomerics holds a lien on the molds used to make the electrode product. *Id.* If needed, Biomerics will sell the molds in order to recoup the money it lost to Nimbus. *Id.*

On September 21, 2017, Biomerics filed a Complaint against Nimbus detailing multiple causes of action, including breach of contract, quantum meruit, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. *See generally* Complaint (Dkt No. 1). Nimbus failed to file an Answer or otherwise respond within the time required by the Federal

Rules of Civil Procedure.  Accordingly, on November 3, 2017, the Court entered default against Nimbus.  *See* Dkt. No. 6.

## **LEGAL STANDARD**

In Delaware, to succeed on a breach of contract claim, a plaintiff must show "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  *See also Universal Enter. Group, L.P. v. Duncan Petroleum Corp.*, No. 4948-VCL, 2013 Del. Ch. LEXIS 162, at *52 (Del. Ch. July 1, 2013) (stating the same).  "[D]amages for breach of contract will be in the amount sufficient to return the party damaged to the position they would have been in had the breach not occurred." *Delaware Limousine Services, Inc. v. Royal Limousine Service, Inc.*, No. 87C-FE-104, 1991 Del. Super. LEXIS 130, at *8 (Del. Super. Ct. Apr. 5, 1991).

"The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement." *NAMA Holdings, LLC v. Related WMC LLC*, No. 7934-VCL, 2014 Del. Ch. LEXIS 232, at *47 (Del. Ch. Nov. 17, 2014) (quoting *Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 182 (Del. Ch. 2014)).  The court must determine whether there is a gap that needs to be filled.  *Id.*  If the Court determines there is a gap that needs to be filled, the Court must determine how to fill it and asks what the parties would have agreed to had they themselves considered the issue when bargaining for the contract.  *Id.* at *49-51.

"*Quantum meruit* has two distinct branches.  Both branches, however, are rooted in justice to prevent the defendant's enrichment at the plaintiff's expense."  *Davies v. Olson*, 746

P.2d 264, 269 (Utah Ct. App. 1987).  "Quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant."  *Emergency Physicians Integrated Care v. Salt Lake County*, No. 20060255, 2007 UT 72, at *P10 (Utah Sep. 7, 2007).

"A contract implied in fact is a 'contract' established by conduct."  *Davies*, 746 P.2d at 269 (citing Restatement (Second) of Contracts § 5 comment a (1981)).  "The elements of a contract implied in fact are: (1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation."  *Id.*

To succeed on a claim for unjust enrichment (also called quasi-contract or contract implied in law), three elements must be met.

> [First] a benefit conferred on one person by another; [second] an appreciation or knowledge by the conferee of the benefit; and [third] the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1994).  *See also Emergency Physicians*, No. 20060255, 2007 UT 72, at *P10 (stating similar).

"Upon entry of default, the court may enter default judgment against a defendant. Decisions to enter judgment by default are committed to the district court's sound discretion." *Orbit Irrigation Prods. v. Sunhills Int'l, LLC*, No. 1:10-CV-113 TS, 2015 U.S. Dist. LEXIS 16992, at *5 (D. Utah Nov. 30, 2015) (quoting *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)) (internal quotations removed).

## ARGUMENT

Here, Biomerics has demonstrated its breach of contract claim.  There is no doubt that a contract exists via the D&S Contract.  Under the Contract, pursuant to, at least, §§ 2.3(f) and/or 2.7, Biomerics is entitled to repayment of the fees RS Medical, Nimbus' client, owes to Biomerics for the delivered electrode products.  Since 2014, Biomerics has been denied, and continues to be denied, payment for these electrodes.  Further still, Biomerics was forced to spend nearly $18,000 in legal fees on attempts to collect the fees from RS Medical, on behalf of Nimbus.  Accordingly, Nimbus has breached, and continues to breach, the D&S Contract by failure to pay the outstanding fees.  Biomerics has been, and continues to be, harmed by Nimbus' failure to pay the fees it owes Biomerics.

In addition, the parties entered into the D&S Contract with the understanding that the parties would deal fairly with each other and in good faith.  Nimbus continues to violate this covenant of good faith and fair dealing by its continued failure to compensate Biomerics for the uncollected fees for the sale of product to Nimbus' customer RS Medical and legal fees to collect the same.

Further, Biomerics has demonstrated its unjust enrichment and/or quantum meruit claims.  Here, Nimbus requested Biomerics pay its legal fees during the negotiation of the sale of Nimbus assets to Biomerics.  Nimbus also requested Biomerics pay the upkeep fees for Nimbus' intellectual property during the negotiations.  Biomerics paid each of these fees, along with necessary audit fees, with the reasonable expectation that Nimbus would repay Biomerics in the form of a reduction in the purchase price of the Nimbus assets.  To date, the purchase of the Nimbus assets has not been finalized.  However, Nimbus has still received numerous benefits in

the form of legal advice about the negotiations to sell and in the preservation of its intellectual property rights at the direct expense of Biomerics.  Nimbus should not be allowed to benefit from these advanced fees without repaying Biomerics for its effort.

Accordingly, Biomerics is entitled to a judgment in the amount of $99,339.16 in damages based off of Nimbus' breach of the D&S Contract and unjust enrichment and/or benefits due to quantum meruit.

Biomerics' damages are calculated and supported as follows:

a.    Contract damages in the total amount of $9,753.81 as demonstrated by Exhibits 2 and 3 to the Declaration of Travis Sessions and as detailed below:

| Description | Amount |
|---|---|
| Uncollected Fees from RS Medical Shipped on Behalf of Nimbus | $86,250.00 |
| Legal Fees for Attempts to Collect Fees from RS Medical on Behalf of Nimbus | $17,966.31 |
| Deduction Pursuant to the Short-Term License to Sell Agreement | ($94,462.50) |
| **Total** | **$9,753.81** |

b.    Pursuant to, at least, §§ 2.3(f), and/or 2.7 of the D&S Contract, Biomerics is entitled to repayment by Nimbus of the Uncollected Fees for the product Biomerics shipped to RS Medical on behalf of Nimbus (totaling $86,250.00) and for all legal fees expensed by Biomerics to collect the fees from RS Medical on behalf of Nimbus (totaling $17,966.31).  *See* Exhibits 2 and 3 to the Declaration of Travis Sessions.

c.    Under the first License to Sell Agreement, Biomerics agreed to deduct $12.50 for each Nimbus RF Multi-tined Electrode Product sold during the 90-day license from Nimbus'

debt to Biomerics.  *See* Declaration of Travis Sessions ¶ 9, Exhibit 4.  During this time period

Biomerics sold 7,557 Products with a value of $94,462.50 in deductions.  *Id.* ¶ 10.  Accordingly,

the total fees Nimbus owes Biomerics were reduced from $104,216.31 to $9,753.81.  *Id.*

     d.    Biomerics is entitled to statutory pre-judgment interest at the rate codified by

Delaware Code Title 6, Subtitle II, Chapter 23 § 2301[1] for damages for Nimbus' breach of the

D&S Contract, calculated from the date each invoice of RS Medical products was due through

the date the first Short-Term License to Sell Agreement was entered into, October 1, 2016.  For

ease, Biomerics has assumed that all 7,557 products sold under the Short-Term License to Sell

Agreement were sold on October 1, 2016, and that the deduction to Nimbus was given

immediately upon sale.  Biomerics is also entitled to statutory pre-judgment interest at the same

rate for damages for Nimbus breaching the D&S Contract, calculated from the date the legal fees

for attempts to collect the RS Medical products on behalf of Nimbus were due through the end of

the previous month, October, 2017.  Biomerics calculates this interest to be $10,030.53.[2]  *See*

Declaration of Travis Sessions ¶¶ 11-18.

---

[1] "Delaware law provides that if a contract is silent as to an interest rate, interest must nonetheless be paid.  6 Del. C. §2301(a) provides that, 'where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate . . . .'"  *Watkins v. Beatrice Cos.*, 560 A.2d 1016, 1023 (Del. 1989).  *See also United States ex rel. Endicott Enters. v. Star Bright Constr. Co.*, 848 F.Supp. 1161, 1169 (D. Del. 1994) ("Under Delaware law, a party is entitled to prejudgment interest when the amount of damages are calculable, and such interest has been awarded in breach of contract cases").  "Such interest is calculated from the date payment is due."  *US ex rel. Endicott*, 848 F.Supp. at 1169 (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992)).

[2] "Although compound interest may be the type of interest generally obtained by investors, it is not generally favored in the law."  *Weinberger v. UOP, Inc.*, 517 A.2d 653, 657 (Del. Ch. 1986).  *See also Branin v. Stein Roe Inv. Counsel, LLC*, No. 8481-VCN, 2015 Del. Ch. LEXIS 203 at *24 (Del. Ch. July 31, 2015) ("[T]he statute has been interpreted as providing for simple interest only.  While the Court has questioned the rule of awarding simple interest, it cannot legitimately

e.      Quantum meruit/unjust enrichment damages in the amount of $79,554.82 as demonstrated by Exhibits 5-11 to the Declaration of Travis Sessions and as detailed below:

| Description | Amount |
|---|---|
| Legal Invoice Paid – Richards Brandt Miller Nelson | $17,464.50 |
| Legal Invoice Biomerics is Obligated to Pay – Richards Brandt Miller Nelson | $22,345.50 |
| Patent Expense – CPA Global | $21,625.65 |
| Australian Patent Application – FB Rice | $3,232.00 |
| Israeli Patent Application – Reinhold Cohn & Partners | $1,867.72 |
| Patent Coordination and Filing – Med Venture Management | $4.200.00 |
| G-Med Audit Charges | $8,819.45 |
| **Total** | **$79,554.82** |

Additionally, Biomerics is entitled to post-judgment interest on this Judgment at the rate allowed at the time of entry of the Judgment.

The requested damages in the proposed Judgment filed concurrently do not differ in kind or amount from those demanded in Biomerics' Complaint against Nimbus, pursuant to Fed. R. Civ. P. 54(c).

---

reinterpret the statute.")  Here, Biomerics has calculated simple interest.  However, if the Court believes the award of compound interest is in the interest of justice, Biomerics requests the Court grant it pre-judgment interest compounded quarterly.  *See ReCor Med., Inc. v. Warnking*, No. 7387-VCN, 2015 Del. Ch. LEXIS 32, at *2 (Del. Ch. Jan. 30, 2015) (awarding compound interest on post-judgment interest as "compound interest is a more accurate means of measuring the time value of money owed by Defendants to [Plaintiff]").  *See also Underbrink v. Warrior Energy Servs. Corp.*, No. 2982-VCP, 2008 Del. Ch. LEXIS 65, at *75 (Del. Ch. May 30, 2008); *Beard Research, Inc. v. Kates*, 8 A.3d 573, 620 (Del. Ch. 2010) (both granting pre-judgment interest that is compounded quarterly).

## <u>CONCLUSION</u>

Accordingly, Biomerics respectfully requests the Court order default judgment against Nimbus in the total amount of $99,339.16 as set forth in the proposed Judgment filed with this Motion.

DATED: November 8, 2017.

**THORPE NORTH & WESTERN LLP**

<u>/s/ Jed H. Hansen</u>
Mark M. Bettilyon
Jed H. Hansen
Ian Wang

*Attorneys for Biomerics, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**MOTION FOR ENTRY OF DEFAULT JUDGMENT** was served upon the following parties

by the methods indicated below:


Nimbus Concepts, LLC
**C/O The Corporation Trust Company**
1209 Orange Street
Wilmington, DE 19801

☐ Electronic Mail
☒ United States Mail, First Class
☐ Overnight Delivery
☐ Fax Transmission
☐ CM/ECF Notification


Robert E. Wright, MD
925 Lincoln Street PH
Denver, Colorado  80203
wright.dpm@gmail.com

☒ Electronic Mail
☒ United States Mail, First Class
☐ Overnight Delivery
☐ Fax Transmission
☐ CM/ECF Notification


DATED this 8th day of November, 2017.


                                  */s/Maja Ljubicic*
                                  Maja Ljubicic