# Exhibit A

Mark Bettilyon (4798)
Jed H. Hansen (10679)
Ian Wang (15035)
**THORPE NORTH & WESTERN LLP**
175 S. Main St., Suite 900
Salt Lake City, UT 84111
Telephone: (801) 566-6633
Facsimile: (801) 566-0750
E-mail: mark.bettilyon@tnw.com
         hansen@tnw.com
         ian.wang@tnw.com

*Attorneys for Biomerics, LLC*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| BIOMERICS, LLC, a Utah limited liability company, | Case No.: 2:17-cv-01059-TS |
| Plaintiff | **DECLARATION OF TRAVIS SESSIONS IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT** |
| v. | |
| NIMBUS CONCEPTS, LLC, a Delaware limited liability company, | Judge Ted Stewart |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746, I, Travis Sessions, declare that:

1.      I am the Chief Executive Officer of Biomerics, LLC ("Biomerics"), a Utah Limited Liability Company with its principal place of business in Salt Lake City, Utah, and the Plaintiff in the above captioned matter.

2.      On or about June 1, 2012, Biomerics and Defendant Nimbus Concepts, LLC ("Nimbus") entered into a D&S Contract to develop an Electrosurgical Radiofrequency Multi-tined Expandable Electrode. A true and correct copy of the D&S Contract is attached as Exhibit 1.

3.      Both Biomerics and Nimbus jointly operated under and complied with the D&S Contract until 2016.

4.      At all times Biomerics has performed and completed its obligations under the terms of the D&S Contract, and expects to be paid for all services rendered under the same.

5.      From October through December 2014, Biomerics sent Nimbus' client RS Medical separate invoices totaling $86,250.00.  True and correct copies of these invoices are attached as Exhibit 2.

6.      RS Medical never paid these invoices and Nimbus assumed liability for these unpaid amounts pursuant to, at least, §§ 2.3(f), and/or 2.7 of the D&S Contract.

7.      Under these same provisions, Nimbus assumed liability for the $17,966.31 Biomerics expended on behalf of Nimbus, in an effort to collect the unpaid fees from RS Medical.  True and correct copies of these collection invoices are attached as Exhibit 3.

8.      Effective October 1, 2016, Biomerics and Nimbus entered into a Short-Term License to Sell Agreement.  A true and correct copy of the Short-Term License to Sell Agreement is attached as Exhibit 4.

9.      Under the Short-Term License to Sell Agreement, Biomerics agreed to deduct $12.50 for each Nimbus RF Multi-tined Electrode Product Biomerics sold during the length of the Agreement from the outstanding balance Nimbus owed Biomerics.

10.     During the length of this Agreement, Biomerics sold 7,557 Products totaling $94.462.50 in deductions.  Accordingly, Biomerics discounted the amount of money Nimbus owes Biomerics for the RS Medical fees from $104,216.31 to $9,753.81.

11.     I understand that under Delaware law, Biomerics is entitled to interest at the amount of 5% above the Federal Discount Rate.  I understand that simple interest is due for the

2

$86,500 Nimbus owed Biomerics from the date each invoice was due until October 1, 2016, when Biomerics and Nimbus entered into the Short-Term License to Sell Agreement.

12.    Nimbus owed Biomerics $47,250 on October 30, 2014, $36,500 on November 30, 2014, and $2,500 on December 20, 2014, from the RS Medical debt.

13.    I understand the Federal Discount Rate + 5% from October 30, 2014 (the date the first invoice for $47,250 was due) through December 16, 2015, is 5.75%. From December 17, 2015 through October 1, 2016, the rate is 6%.

14.    Accordingly, I understand the total interest owed to Biomerics from October 30, 2014 (pro-rating the other bills to November 30, 2014, and December 20, 2014, respectively) to October 1, 2016, to be $9,390.01.

15.    I also understand interest is owed for the legal fees Biomerics paid on behalf of Nimbus in an attempt to collect the unpaid fees from RS Medical.

16.    As noted above, pursuant to the Short-Term License to Sell Agreement, the total amount of fees Nimbus owes Biomerics was reduced to $9,753.81. Biomerics paid this legal fees bill on October 31, 2016. Accordingly, interest has been calculated on the legal fees from October 31, 2016 through the end of this past month, October 31, 2017.

17.    I understand the Federal Discount Rate + 5% from October 31, 2016 through December 14, 2016, is 6.0%. From December 15, 2016 through March 15, 2017, the rate is 6.25%. From March 16, 2017 through June 14, 2017, the rate is 6.5%. From June 15, 2017 through October 31, 2017, the rate is 6.75%.

18.    Accordingly, the total interest owed to Biomerics from October 31, 2016 to October 31, 2017, is $640.52.

3

19.     On Nimbus' request, Biomerics paid for certain attorney's fees for Nimbus related to the potential sale of Nimbus to Biomerics, with the understanding that Nimbus would reimburse Biomerics.  A true and correct copy of an invoice totaling $17,464.50 is attached as Exhibit 5 and an invoice totaling $22,345.50 is attached hereto as Exhibit 6.

20.     Also on Nimbus' request, Biomerics paid certain fees for upkeep of Nimbus' intellectual property during negotiations for the sale, also with the understanding that Nimbus would reimburse Biomerics.  True and correct copies of these fees totaling $30,925.37 are attached as Exhibits 7-10.

21.     Biomerics expended $8,819.45 in audit charges it expects to be reimbursed for under the D&S Contract.  True and correct copies of these charges are attached as Exhibit 11.

22.     A demand for payment of all outstanding matters has been made.  To date, Nimbus has not made payment of the above amounts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November _____, 2017.

_____
Travis Sessions

4

# Exhibit 1

EXECUTION COPY

## DEVELOPMENT AND SUPPLY AGREEMENT

This DEVELOPMENT AND SUPPLY AGREEMENT (the "Agreement") is entered into effective as of June 1, 2012 (the "Effective Date"), by and between Biomerics, LLC, a Utah limited liability company ("Biomerics"), with its principal place of business at 2700 South 900 West, Salt Lake City, Utah 84119; and Nimbus Concepts (Spine), LLC., a Delaware corporation ("Nimbus"), with its principal place of business at 925 Lincoln PH, Denver, Colorado 80203. This Agreement sometimes refers to the foregoing parties individually as a "Party" and collectively as the "Parties."

### RECITALS

A.      Biomerics is an OEM contract manufacturer of medical devices.

B.      Nimbus is a medical device developer of medical device solutions for the pain management market.

C.      Nimbus desires to contract Biomerics to perform certain development, manufacturing, sales support, and fulfillment services for Nimbus under the terms and conditions of this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants, promises, and obligations set forth herein, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Biomerics and Nimbus mutually agree as follows:

**1. Definitions.** In addition to terms defined elsewhere in this Agreement, including in the preamble and Recitals, the following terms shall have these meanings as used in this Agreement:

1.1    "Act" means the United States Federal Food, Drug and Cosmetic Act, as amended from time to time, and the rules, regulations and guidelines promulgated thereunder.

1.2    "Affiliate" means, with respect to any Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person at any time during the period for which the determination of affiliation is being made. A Person shall be regarded as in control of another Person if it owns, or directly or indirectly controls, at least fifty percent (50%) of the voting stock or other ownership interest of the other Person, or if it directly or indirectly possesses the power to direct or cause the direction of the management and policies of the other Person by any means whatsoever.

1.3    "Background IP" means any and all existing Intellectual Property that is either (a) owned by a Party and its Affiliates prior to the Effective Date or (b) licensed to

such Party and its Affiliates prior to the Effective Date with the right to use or sublicense such Intellectual Property to a third party.

1.4    "Change of Control" means, with respect to a Party or an Affiliate that controls such Party ("Party Parent Company"), the occurrence of the following in one transaction or a series of related transactions: (a) the merger or consolidation of a Party or its Party Parent Company into or with another Person not an Affiliate of such Party or its Party Parent Company (as the case may be) that results in the holders of the voting securities of such Party or such Party Parent Company immediately prior to such merger or consolidation holding in the aggregate less than a majority of the combined voting power of the voting securities of the resulting entity after such merger or consolidation or (b) the sale, exchange or other transfer by a Party or its Party Parent Company of (i) all or substantially all of its assets to any other Person not an Affiliate of such Party or its Party Parent Company (as the case may be), or (ii) a majority of all of the voting securities of such Party or its Party Parent Company to any other Person not an Affiliate of such Party or its Party Parent Company (as the case may be). In the event of a Change of Control of a Party, such Party shall notify the other Party, in writing, promptly upon the consummation of such Change in Control.

1.5    "Confidential Information" means any information that (a) in any way relates to a Party or its Affiliates, including its products, business, business strategies and technology, and (b) is furnished or disclosed to the other Party in connection with this Agreement, and is identified as "confidential" (or words of similar import) upon such disclosure; provided, however, that the term "Confidential Information" shall not include any specific information that (i) at the time of disclosure, is generally available to the public; (ii) after disclosure hereunder, becomes generally available to the public, except as a result of a breach of this Agreement by the recipient of such information; (iii) becomes available to the recipient of such information from a third party that is not legally or contractually prohibited by the disclosing Party from disclosing such information; or (iv) the recipient of which can demonstrate by contemporaneous documentation was developed by or for such recipient without the use of any of the Confidential Information of the disclosing Party or its Affiliates hereunder.

1.6    "Developments" means any and all inventions (whether or not patentable), works of authorship of any type, trade secrets, know-how and any Intellectual Property related to medical devices (including their manufacture and methods of use) that is conceived, created, authored, invented, reduced to practice, or otherwise developed, solely or jointly, by the Parties, one Party and/or its respective Affiliates, as of the Effective Date or during the Term of this Agreement.

1.7    "Field" means the management of pain in humans by radiofrequency neurotomy.

1.8    "Governmental Authority" means any United States or foreign government, governmental authority, court, tribunal, agency, or other regulatory, administrative, or judicial agency, commission, or organization, and any subdivision, branch, or department of any of the foregoing.

2

1.9    "Intellectual Property" means any and all (a) patents, utility models, design registrations, certificates of invention, and other governmental grants for the protection of inventions or industrial designs, including any reissues, renewals, re-examinations or extensions thereof, and applications for any of the foregoing, including provisional, divisional, continuation, and continuation-in-part applications; (b) registered and unregistered trademarks, service marks, trade names, trade dress, brand names, logos, applications for registration, and all goodwill associated therewith; (c) works of authorship, copyrights, copyright registrations, copyright registration applications, and all other rights corresponding thereto, including author's rights and moral rights; (d) confidential information, trade secrets, and other nonpublic know-how, including inventions, discoveries, improvements, concepts, ideas, methods, processes, designs, schematics, drawings, formulae, technical data, specifications, research and development information, databases, and technology, manufacturing information (including specifications, manufacturing procedures and protocols, quality control procedures and data, vendor lists, and manufacturing equipment documentation and validation procedures), and all other rights in know-how and confidential and proprietary information; (e) rights to sue for past, present, and future infringements, misappropriations, dilutions, violations, and other unauthorized uses of any of the foregoing, including the right to recover damages and to obtain any other relief; and (f) all similar or corresponding existing and future rights throughout the world.

1.10    "Law" means any federal, state, local, foreign, or international law, statute, treaty, ordinance, rule, regulation, act, order, judgment, ruling, or binding pronouncement of any Governmental Authority, including the Act.

1.11    "Person" means any natural person or any corporation, partnership, trust, limited liability company, association, organization, Governmental Authority, or other legal entity.

1.12    "Products" means any and all of the following products that Biomerics is contracted to supply to Nimbus or third parties (on Nimbus's behalf) pursuant to this Agreement: "Nimbus Devices" are defined as (i) the Nimbus Electrosurgical Radiofrequency Multitined Expandable Electrode for large lesion neuroablation (including size, length, and tip variations); and (ii) any RF pain management procedural device based on Nimbus Intellectual Property that the Parties agree to add as a "Product" hereunder pursuant to a written amendment to this Agreement, executed by each of the Parties hereto.

1.13    "Regulatory Registrations" means any and all licenses, registrations, authorizations, certifications, clearances and approvals of any applicable Governmental Authority necessary for the development, manufacture, distribution, marketing, promotion, offer for sale, use, import, export and sale of Product(s) in a regulatory jurisdiction in the Territory, including 510(k) clearances and CE listing.

1.14    "Regulatory Materials" shall mean regulatory applications, notifications, registrations, Regulatory Registrations or other submissions made to or with an applicable Governmental Authority, and supporting documentation, data and information

(including each Product's design history file, design, listing file and other design control documentation), that are necessary or reasonably desirable in order for the development, manufacture, distribution, marketing, promotion, offer for sale, use, import, export and sale of Product(s) in a regulatory jurisdiction in the Territory.

1.15 "Specifications" means the specifications for each Product, including the design, manufacture, packaging, labeling and quality control specifications (a) with respect to the Nimbus Device, as set forth on Exhibit A and (b) as to any other Product as mutually agreed in writing by the Parties.

1.16 "Territory" means worldwide.

## 2. Supply of Products to Nimbus.

2.1 Product Exclusivity.

(a) Subject to the terms of this Agreement, Nimbus shall exclusively purchase Products in the Field for use or resale in the Territory from Biomerics for the Term of this Agreement.

(b) Subject to the terms of this Agreement, neither Biomerics nor its Affiliates shall, directly or indirectly, develop, manufacture, supply, offer for sale, sell, distribute or otherwise make available (or license, authorize, assist, advise or otherwise contract with a third party to do any of the foregoing) any product in the Field in the Territory for the Term of this Agreement, other the Products for Nimbus as provided herein, without the express written consent of Nimbus.

(c) The Parties acknowledge and agree that both Parties are investing substantial efforts, resources, and opportunity costs with respect to this Agreement and that the above exclusivity provisions are therefore reasonable in all respects.

2.2 Purchase Orders.

(a) Nimbus will purchase Products from Biomerics under this Agreement by submitting or causing Nimbus customers to submit purchase orders to Biomerics (each, an "Order"). Each Order, after delivery to and acceptance by Biomerics, will constitute a binding agreement governed by this Agreement; provided that any order submitted by a Nimbus customer to Biomerics directly shall also require Nimbus's acceptance prior to becoming binding on Nimbus. Unless otherwise agreed in writing and signed by both Parties, any provision in an Order that is inconsistent with any provision of this Agreement shall be of no force or effect. An Order received by Biomerics shall be deemed accepted by Biomerics if Biomerics does not deliver to Nimbus a written rejection of the Order and the reasons for such rejection within five (5) days of Biomerics's receipt of the Order. Subject to the foregoing, all Orders will become binding on the Parties on the earlier of (a) written acceptance by Biomerics, (b) shipment of the Products by Biomerics, or (c) constructive acceptance of the Orders as provided in this Section 2.2. To the extent of any conflict or inconsistency between this Agreement and any purchase order (including an Order), purchase order release,

confirmation, acceptance, acknowledgment or any similar document, the terms of this Agreement shall govern.

(b)     Biomerics hereby accepts each of the following purchase orders for Nimbus Product: (1) Purchase Order from RS Medical in the form of <u>Exhibit B</u> attached hereto ("RS Demo Purchase Order") to provide 500 units (not for human use and 500 units (sterile, but not for human use until 510(k) clearance) of the Nimbus Device for demonstration usage; for which Biomerics acknowledges receipt of $25,000 as full payment therefor and (2) Purchase Order from RS Medical in the form of <u>Exhibit C</u> attached hereto ("RS Stocking Order") for 10,000 units of Nimbus Device for $25.00 per unit to be paid as provided in Section 2.3 below with delivery subject to receipt of 510(k) clearance on Nimbus Device.

2.3     <u>Price, Delivery, and Payment.</u>

(a)     The price for Products supplied by Biomerics to Nimbus pursuant to this Agreement will be agreed upon in advance and in writing by the Parties; provided that the price for the Nimbus Device shall not exceed $25.00 per unit during the Term of this Agreement or thereafter for Nimbus Devices supplied pursuant to Section 8.4 hereof.

(b)     Prices do not include shipping charges. If shipping charges are applicable, they will be separately stated on Biomerics's invoice.

(c)     All applicable taxes, including but not limited to sales and use taxes, and other charges such as duties, customs and tariffs, will be stated separately on Biomerics's invoice and Nimbus shall be responsible for payment thereof (including reimbursement of amounts paid by Biomerics). Biomerics will remit all such charges to the appropriate tax authority on a timely basis as required by law, unless Nimbus provides proof of tax exemption. Notwithstanding the above, each Party is responsible for its own respective income taxes or taxes based upon gross revenues, including but not limited to business and occupation taxes.

(d)     Biomerics will package, pack, mark and ship the Products for delivery in a manner consistent with reasonable commercial practices designed to provide for safe keeping of the Products during shipment. Shipping terms are FOB, Biomerics's manufacturing facility, prepaid and add. Each package will include a packing list that specifies the purchase order number. Shipments will conform to the quantities and delivery schedules on each purchase order accepted by Biomerics (and, as applicable Nimbus) as specified in Section 2.2.

(e)     All Products ordered under this Agreement shall be delivered or provided to Nimbus or Nimbus assigns within the time specified in the Order, unless the Parties mutually agree otherwise.

(f)     Unless otherwise agreed to by the Parties, Nimbus agrees to pay Biomerics in full for all Products within forty-five (45) days after Nimbus's receipt of the applicable invoice for such Product. Biomerics shall invoice Nimbus for each shipment of Product on and after the shipment date. Notwithstanding the foregoing, payment terms

5

for the RS Stocking Order shall be 34% of the aggregate purchase price within 5 days of the Effective Date, 33% of the aggregate purchase within 30 days of Product shipment and the remainder within 60 days of Product shipment.

2.4    Late Shipments. If Biomerics is not able to meet the delivery date for the Products specified on the purchase order, Biomerics will immediately notify Nimbus and (as applicable) Nimbus's customer in writing and include the reasons therefore. In such event, Biomerics will ship the Products on an expedited basis.

2.5    Timely Delivery. If Biomerics fails to timely deliver at least eighty percent (80%) of the amount of Products ordered by Nimbus or its customers pursuant to Orders hereunder over any period of one-hundred and twenty (120) or more consecutive days, then, in addition to any other rights Nimbus may have, Nimbus, without further notice to Biomerics, shall be relieved of any obligation under Section 2.1(a) to exclusively purchase all of the Products from Biomerics. Subject to the foregoing, in the event Biomerics is unable to supply due to a force majeure event, Nimbus agrees to work with Biomerics to develop alternative supply option while retaining its exclusivity supply position. For the purposes hereof, Product rejected as non-conforming shall not be considered delivered.

2.6    Alternative Manufacturing Site. In the event Biomerics exclusive rights are terminated (either pursuant to Section 2.5 or upon termination or expiration of this Agreement), at Nimbus's request, Biomerics shall provide reasonable assistance to Nimbus in the transfer of all or a portion of Product production to such alternative manufacturing site. In consideration of the assistance provided by Biomerics pursuant to this Section 2.6, Nimbus shall pay Biomerics a fee based on Biomerics then standard rates for such services and reimburse Biomerics its out-of-pocket costs incurred in providing such assistance so long as such fees and costs are approved in writing in advance by Nimbus and supported by reasonable documentation (copies of which shall be provided to Nimbus at its request).

2.7    RS Medical Distribution Agreement. Biomerics acknowledges that Nimbus has entered into a Distribution Agreement dated June 1, 2012 ("RS Medical Distribution Agreement") with International Rehabilitative Sciences, Inc. ("RS Medical") pursuant to which Nimbus has agreed to supply to RS Medical Nimbus Devices for resale in the United States for use within the Field. Biomerics acknowledges its receipt of a copy of the RS Medical Distribution Agreement. To the extent the manufacturing and supply obligations of Nimbus set forth in the RS Medical Distribution Agreement are more onerous than the manufacturing and supply obligations of Biomerics set forth herein, then, in addition to any obligations Biomerics has undertaken under this Agreement, Biomerics hereby agrees to supply Nimbus Devices to Nimbus and its customers hereunder on terms that will ensure that Nimbus has the ability and a reasonable opportunity to comply with the terms of the RS Medical Distribution Agreement. Without limiting the foregoing, Biomerics agrees to the requirement to enter into a Supplier Quality Agreement with RS Medical as provided in Section 12.2 of the RS Medical Distribution Agreement.

3. **Quality Control.**

    3.1    <u>Specifications; Change Control.</u>  The Specifications for each Product shall not be changed or amended, except by mutual written agreement of the Parties. With respect to any Specifications changes that are required by applicable Law, the Parties shall reasonably cooperate in making such changes promptly, and Biomerics shall, unless otherwise mutually agreed to in writing by the Parties, bear the costs of implementing such changes.  With respect to Specifications changes that are not required by applicable laws, the Parties shall cooperate in good faith to reach a mutually agreeable solution with regard to such changes and the cost of making a discretionary change shall be borne solely by the Party initiating the change or as otherwise mutually agreed to in writing by the Parties.  Subject to securing Nimbus's approval as to any change as provided above, Biomerics shall give Nimbus 180 days' written notice prior to making any design change to the Product that affects form, fit or function and 60 days' notice for any design change to the Product that does not affect form, fit or function.

    3.2    <u>Manufacture</u>.  Biomerics shall manufacture all Products or cause them to be manufactured in a facility that is certified under ISO 13485 and in accordance with (1) the applicable Specifications, (2) Biomerics's (or its manufacturer's) quality control system, (3) current best manufacturing practices specified by U.S., Canadian, and European practices and by all applicable U.S. Laws, and (4) upon delivery of such Products to Nimbus or its customers, each such Product shall not be adulterated or misbranded under the Act or other applicable Law.

    3.3    <u>Quality Control Program</u>. Biomerics shall maintain a comprehensive process and quality control program. The quality control program will be part of a quality management system that supports the ISO 13485 or substantially similar standards. Biomerics shall maintain, quality records in accordance such standards.

    3.4    <u>FDA Requirements</u>. Biomerics shall comply with all FDA requirements applicable to it as a medical device manufacturer, including requirements for medical device listing and establishment registration, Adverse Event reporting (Medical Device Reporting) and current good manufacturing practices as promulgated under the Act.

    3.5    <u>Reduction of Hazardous Substances; Recycling</u>. To the extent required by applicable Laws, Biomerics shall comply, with mandatory reduction of hazardous substances and materials or equipment recycling requirements (e.g., RoHS) required for the Products.

    3.6    <u>Recall</u>.  In the event either Party believes it may be necessary to conduct a recall, field correction, market withdrawal, stock recovery, or other similar action with respect to any Product (a "<u>Recall</u>"), the Parties shall consult with each other as to how best to proceed, it being understood and agreed that the final decision as to any Recall of any such Product shall be made by Nimbus; provided, however, that Biomerics shall not be prohibited hereunder from taking any action that it is required to take by applicable Laws.  Nimbus shall bear all costs in connection with any such Recall; provided, however, that (a) Nimbus will not be responsible for the costs of Biomerics's personnel,

and (b) Biomerics shall reimburse Nimbus for all reasonable out-of-pocket expenses incurred by Nimbus in connection with any such Recall (including, at Nimbus's option, replacement or refund of recalled Product) to the extent attributable to (i) any breach by Biomerics hereunder, (ii) the failure of Biomerics to comply with applicable Laws, or (iii) the negligent or willful misconduct of Biomerics. Notwithstanding the foregoing, nothing in this Section 3.6 shall reduce either Parties indemnification obligations under Section 7.

3.7     <u>Adverse Event Reporting</u>. Biomerics shall be responsible for all reporting to regulatory authorities of all Adverse Events associated with the use of Products. Nimbus shall notify Biomerics of any report of an Adverse Event concerning the Products within five (5) calendar days of receipt of the report and provide Biomerics with information as required by applicable Laws or as reasonably requested by Biomerics. Nimbus shall cooperate with Biomerics as necessary to report such Adverse Event when so required under applicable Laws. As used herein, "<u>Adverse Event</u>" shall mean any event which requires the filing of a report with the FDA under the medical device reporting (MDR) requirements of 21 Code of Federal Regulations Section 803, or the filing of a report of similar nature to any other applicable governmental authority or agency in the Territory.

3.8     <u>Product Complaints</u>. In compliance with applicable Laws, Biomerics shall establish a method or procedure for handling Product Complaints as well as maintain a file for each such Product Complaint. It will also notify Nimbus of Product Complaints on a monthly basis, or otherwise no less frequently than required by such applicable Laws, and will thereafter keep Nimbus reasonably abreast of developments regarding the Product Complaint, including the manner in which it is resolved. The Parties shall cooperate and use good faith efforts to assist in the resolution of Product Complaints. As used herein a "<u>Product Complaint</u>" shall mean any written, electronic or oral communication that alleges deficiencies related to the identity, quality, durability, reliability, safety, effectiveness or performance of the Product after it is released for sale.

3.9     <u>FDA Communications</u>. Biomerics shall promptly notify Nimbus in the event Biomerics receives any communication or notice from the FDA or other Governmental Authority with respect to the Products or an inspection of the facility where any of the Products is manufactured, and Biomerics shall promptly provide a copy of such communications to the extent applicable to the Products to Nimbus. The Parties shall cooperate in good faith in responding to any such FDA or other Governmental Authority inquiry or in making any report to the FDA or other Governmental Authority (as the case may be) with respect to any of the Products.

3.10    <u>Inspections</u>.

(a)     Biomerics shall maintain and operate the manufacturing facility at which any of the Products are manufactured, and shall implement such quality control procedures, so as to cause Biomerics to be able to perform its obligations hereunder. Upon Nimbus's written request, and at its expense, Biomerics shall permit representatives of any and all of Nimbus, RS Medical or Nimbus's customers to inspect Biomerics's manufacturing

facility, upon reasonable notice (not to exceed 10 days) and during normal business hours to assess such facility's compliance with applicable Law and the terms of this Agreement, including current Good Manufacturing Practices and other quality assurance standards as such relate to the manufacture of the Product. Biomerics shall also permit Nimbus reasonable periodic visits to discuss and review manufacturing and supply issues with management of Biomerics.

   (b) If Biomerics or its facility is inspected by representatives of any Governmental Authority in connection with any of the Products, including Biomerics's manufacture of any Product, then Biomerics shall notify the Nimbus promptly upon learning of such inspection, and shall, within 5 days of such notice, supply Nimbus with copies of any correspondence or portions of correspondence which relate to the Product in Biomerics's possession. If Biomerics receives any regulatory letter or comments from any Governmental Authority in connection with any of the Products, including Biomerics's manufacture of any Product requiring a response or action by Biomerics, including, but not limited to, receipt of a Form 483 (Inspectional Observations) or a "Warning Letter," Biomerics shall promptly following Biomerics's receipt thereof, provide Nimbus with a copy of such communication. The Parties shall cooperate in good faith in responding to any such any regulatory letter or comments from any Governmental Authority. Biomerics shall promptly provide Nimbus with a copy of any final response prior its submission to the regulatory authority.

  3.11 <u>Additional Biomerics Obligations</u>. Biomerics shall perform the following during the Term of this Agreement:

   (a) Seek 510(k) clearance for the Nimbus Device in a timely manner and, once obtained, maintain 510(k) clearance for the sale and marketing of the Nimbus Device in the United States for use in the Field.

   (b) Ensure Biomerics is registered with the FDA as a medical device manufacturer or contract manufacturer in accordance with 21 CFR part 807. Biomerics shall notify Nimbus if Biomerics loses its status as an FDA registered medical device manufacturer.

   (c) Develop and manufacture Product compatible with RF generators, as identified by Nimbus.

   (d) Maintain engineering and development resources to modify and/or improve Product, as appropriate.

   (e) Maintain a manufacturing capability to support the commercialization plan of RS Medical and forecasts and purchase orders provided by RS Medical under the RS Medical Distribution Agreement.

   (f) Provide, as requested by Nimbus or its customers, a reasonable quantity of sales demonstration Products (i.e., not for human use or commercial sale) at a price not to exceed $25.00 each for the Nimbus Device or as otherwise agreed for any other Product.

     (g)     Comply with all applicable Laws.

     (h)     Ensure Biomerics has a disaster recovery plan.

## 4.  Development, Regulatory and other Contract Services.

4.1    <u>Development Projects.</u>  From time to time, Parties may agree to develop additional Projects by executing a Development Plan which shall be added via addendum to this Agreement. The resultant Products shall be governed by the terms and conditions of this Agreement. The specific terms and conditions of the development costs shall be specified in the Development Plan. To the extent of any conflict or inconsistency between this Agreement and any Development Plan, the terms of this Agreement shall govern.

4.2    <u>Regulatory Registrations.</u>

     (a)     Biomerics acknowledges and agrees that Nimbus owns all rights in and to any Regulatory Registrations and Regulatory Materials for the Products. For no additional consideration, Biomerics, on behalf of itself and its Affiliates, hereby irrevocably assigns any and all rights it and its Affiliates may have in any Regulatory Registrations and Regulatory Materials for the Products to Nimbus. Without limiting the generality of the foregoing, Biomerics agrees that, without additional consideration, it will take such further actions and timely execute such other documents and instruments as are necessary or appropriate to confirm and record such conveyances and assignments, including any actions, documents, and instruments required by the applicable Governmental Authority to confirm the same or as otherwise may be necessary or appropriate to protect, secure, and vest good, valid, and marketable title in Nimbus , its successors, and assigns.

     (b)     Subject to Section 4.2(a) above, Nimbus hereby appoints Biomerics as Nimbus's agent ("<u>Regulatory Agent</u>"), during the Term of this Agreement, in the United States and the European Economic Area ("<u>EEA</u>") with respect to dealings with the U.S. Food and Drug Administration and the applicable EEA Notified Body relating to the Nimbus Device and such other Products as the Parties may hereafter from time to time mutually agree in writing and any applicable Regulatory Registrations for the Nimbus Device and such other Products in such jurisdictions. During the Term of this Agreement, Nimbus also appoints Biomerics as the FDA manufacturer of record and the manufacturer of record for CE listing in the EEA for the Nimbus Device and such other Products as the Parties may hereafter from time to time mutually agree in writing.

     (c)     As Nimbus's Regulatory Agent and the FDA manufacturer of record of the Nimbus Device, subject to Section 4.2(a), Biomerics has applied to the FDA, in Biomerics' name, for, and will seek for the benefit of Nimbus, 510(k) clearance for the Nimbus Device. As Nimbus's Regulatory Agent and the manufacturer of record for CE listings of the Nimbus Device, subject to Section 4.2(a), Biomerics has complied with the applicable provisions of the EEA for CE mark listing of the Nimbus Device. Biomerics shall comply with all Laws applicable to the holder of any 510(k) clearance, CE listing or other Regulatory Registrations issued in Biomerics' name and shall

maintain each and every Regulatory Registration issued in its name in full force and effect, subject to Nimbus's compliance with Section 4.2(f).

(d)     Nimbus may, at its sole discretion, effective upon written notice to Biomerics, terminate Biomerics as the Regulatory Agent. Upon such termination, or upon any termination or expiration of this Agreement, or otherwise at the written request of Nimbus, Biomerics shall file documents with the FDA or other applicable Governmental Authority to have any and all Regulatory Registrations then issued in the name of Biomerics issued in the name of Nimbus or its designated Affiliate, for no additional consideration.

(e)     Biomerics shall not make any filings or communicate with the FDA or other Governmental Authority regarding any Products or any Regulatory Registrations without Nimbus's prior approval. Biomerics shall promptly after receipt provide Nimbus with copies of all Regulatory Registrations and Regulatory Materials including FDA or other Governmental Authority correspondence and keep Nimbus informed of any developments concerning the Products and/or any Governmental Registrations. Nimbus shall be entitled to participate in all meetings with FDA and other Governmental Authorities regarding any Products or Regulatory Registrations. So long as Biomerics remains Nimbus's Regulatory Agent and/or manufacturer of the Products, Biomerics warrants and covenants (i) to exercise due care in preserving the value of the Products and the Regulatory Registrations; (ii) to not knowingly take any action that will impair the value of the Products, the Regulatory Registrations or the reputation or goodwill of Nimbus; and (iii) to not assign, pledge, hypothecate, encumber or otherwise grant to any third party or any Affiliate any rights, liens or other encumbrances on any of the Products, the Regulatory Registrations or Regulatory Materials.

(f)     Nimbus shall reimburse Biomerics for any fees payable to Governmental Authorities associated with any Regulatory Registrations issued in Biomerics name; provided that Biomerics notifies Nimbus of such fees and obtains Nimbus's approval prior to incurring such fees.

4.3     In addition to the general responsibilities set forth above, Nimbus has engaged Biomerics to perform the specific responsibilities and to deliver the specific deliverables related to Regulatory Registration of the Nimbus Device and its manufacture as described in the quotes and invoices attached as Exhibit D (the "Regulatory Registration Purchase Orders"). The Parties hereby agree that performance of Regulatory Registration Purchase Orders shall be subject to the terms of this Agreement (and are incorporated herein by this reference). The Parties further acknowledge that of the total compensation payable to Biomerics for its performance (including the deliverables) under the Regulatory Registration Purchase Orders $71,365 remains unpaid by Nimbus. To the extent of any conflict or inconsistency between this Agreement and any of the Regulatory Registration Purchase Orders, the terms of this Agreement shall govern.

4.4     Fulfillment Services. At Nimbus discretion, it may contract Biomerics to ship Products to retail customers for a nominal shipping fee to be agreed upon by both Parties.

4.5     <u>Service Warranty</u>.  Biomerics shall perform any development, regulatory, fulfillment or other services contracted hereunder in a timely and professional manner, consistent with best industry practices and in accordance with this Agreement and applicable Laws and all services and any deliverables will conform to the specifications therefor.  In addition, SM shall not engage any third party or use the resources of any third party in performing any services for Nimbus hereunder, except as consented to in writing in each instance by Nimbus (which may be withheld in its sole discretion). Biomerics shall not disclose to Nimbus or use in performing services or with any deliverable hereunder any trade secrets or other know-how, data, or other Intellectual Property of third parties that Biomerics does not have the absolute and unrestricted right to disclose and/or use and that Nimbus is not free to use without liability.

**5.    Intellectual Property.**

5.1     <u>Background IP</u>. All rights, title, and interest in and to any Background IP that existed as of the Effective Date shall continue to be owned by the Party (or Parties) that owned such Background IP as of the Effective Date, and Biomerics hereby grants to Nimbus and its Affiliates a non-exclusive, fully-paid up, royalty-free, worldwide, perpetual and irrevocable right and license (with the unrestricted right to assign and sublicense) to use and otherwise practice, any Biomerics Background IP that is necessary or useful in the development and commercialization of the Nimbus Device and any other Products. Subject to the foregoing license granted to Nimbus, Biomerics retains the right to sell or license Background IP and/or products manufactured using the Background IP to any third party at its sole discretion.

5.2     <u>Products Intellectual Property</u>.  Notwithstanding anything herein to the contrary, all rights, title, and interest, including  all Intellectual Property rights, in and to the Nimbus Device and any other Products (including  the respective manufacturing processes and methods of use of the Nimbus Device and such other Products) and any and all Developments (collectively, the "<u>Product Intellectual Property</u>") shall belong exclusively to Nimbus, and as such,  Biomerics shall not manufacture or supply any Products, any Developments or any products containing Developments or other Product Intellectual Property to any third party or for any other purpose other than supply to Nimbus or its customers as provided herein, without the written consent of Nimbus.

5.3     <u>Assignment</u>. Notwithstanding anything herein to the contrary, Biomerics, on behalf of itself and its Affiliates, hereby irrevocably assigns to Nimbus all of the right, title and interest of Biomerics and its Affiliates (including  all Intellectual Property rights) that Biomerics and/or its Affiliates may have in any Product Intellectual Property, including but not limited to the Nimbus Device, any other Product and any Developments.  Without limiting the foregoing and by way of clarification, the rights assigned to Nimbus pursuant to this Section 5.3 shall include any and all applications of the Product Intellectual Property in and/or outside the Field.  Biomerics shall make prompt full written disclosure to Nimbus of any Product Intellectual Property when made, conceived or reduced to practice, and shall hold in trust for the sole right and benefit of Nimbus any Product Intellectual Property.  Nimbus shall have the sole right to procure, prosecute, maintain, enforce and defend any patents, copyrights, trademarks or

12

other statutory protections throughout the world in and to the Product Intellectual Property. Biomerics shall, at Nimbus's request and expense, execute documents and perform such acts as Nimbus may deem necessary, to confirm in Nimbus, all right, title and interest throughout the world, in and to the Product Intellectual Property, and to enable and assist Nimbus in procuring, prosecuting, maintaining, enforcing and defending patents, copyrights, trademarks and other statutory protections throughout the world in and to the Product Intellectual Property. Biomerics shall cause each of its employees and/or contractors to execute and deliver to Biomerics an agreement assigning all of such party's right, title and interest (if any) in and to the Product Intellectual Property consistent with this Sections 5.3 so that sole and exclusive ownership therein resides in Nimbus.

5.4    <u>Biomerics License</u>.    Nimbus hereby grants, during the Term of this Agreement, a non-exclusive, royalty-free, non-transferable license to Biomerics to use the Intellectual Property of Nimbus in the Field (including the Product Intellectual Property) solely to perform its obligations to Nimbus hereunder, including to manufacture and supply the Products for Nimbus and/or its distributors hereunder. The above license shall terminate, without notice, upon any termination or expiration of this Agreement. By way of clarification, Nimbus shall remain the sole owner or licensee, as applicable, of all Intellectual Property owned or licensed by Nimbus and Biomerics shall have no rights in or to such Intellectual Property except for the license expressly provided in this Section 5.4.

5.5    <u>Infringement.</u>    Biomerics will promptly notify Nimbus if it becomes aware of any possible infringement, misuse or misappropriation by a third party of any Products Intellectual Property. As between Biomerics and Nimbus, Nimbus shall have the sole and exclusive right (but not the obligation) to defend or institute litigation in connection with any alleged infringement relating to any Product Intellectual Property at its own expense and solely for its own benefit. Biomerics agrees to cooperate with Nimbus as reasonably requested by Nimbus or required by applicable law in order to enforce any of such Products Intellectual Property, at Nimbus's expense, in any such litigation or other dispute.

5.6    <u>Continuous Technology Transfer</u>.    During the Term of the Agreement and for 1 year after termination or expiration of this Agreement, upon Nimbus's request from time to time, Biomerics shall transfer to Nimbus copies of all documentation in Biomerics possession or control related to Product Intellectual Property (including the design and/or manufacture of the Products and any Product Developments) so that Nimbus has all of the information necessary or useful for the manufacture, testing, packaging, and labeling of any Product (including any Product Developments) manufactured and supplied to Nimbus by Biomerics hereunder (including specifications, manufacturing procedures and protocols, quality control procedures and data, vendor lists, and manufacturing equipment documentation and validation procedures). At Nimbus's request, Biomerics shall make such deliveries from time to time so that Nimbus shall have all current manufacturing information relating to the Products. For no additional consideration, Biomerics hereby grants to Nimbus and its Affiliates a non-exclusive, fully-paid up, royalty-free, worldwide, perpetual and irrevocable right and

13

license (with the unrestricted right to assign and sublicense) to use, copy, create derivative works and otherwise practice the documentation and information to be delivered pursuant to this Section 5.6 that Biomerics has not otherwise assigned to Nimbus pursuant to Section 5.3 above.

5.7    Product Tooling. Any production tooling exclusively used in the manufacture of any Product by Biomerics (the "Product Tooling") shall be, as between Biomerics and Nimbus, the sole property of Nimbus.   Subject to the foregoing, the Product Tooling shall remain in the custody of Biomerics and Biomerics shall not use the Product Tooling for any purpose other than for the manufacture of Product.  Biomerics shall effect and bear the reasonable expense of routine repair and maintenance to maintain the Product Tooling in good condition, reasonable wear and tear excepted.  Biomerics shall (i) keep the Product Tooling free of any liens or encumbrances; and (ii) allow Nimbus to inspect the Product Tooling at its request.   At the expiration or termination of this Agreement, or at any other time upon Nimbus's request, Nimbus shall have the right to have custody of the Product Tooling upon demand.

## 6.    Representations and Warranties.

6.1    Representations and Warranties.

(a)    *Mutual Representations and Warranties.* Each Party represents and warrants that (1) this Agreement has been duly and validly executed and delivered by such Party and constitutes the legal, valid, and binding obligation of such Party; (2) such Party has full authority and ability to execute, deliver, and perform this Agreement; (3) such Party's execution, delivery, and performance of this Agreement will not conflict with or violate (i) any provision of any Law to which such Party is subject, or (ii) any agreement or other instrument applicable to such Party or binding upon its assets or properties; and (4) the Person who executes this Agreement on behalf of such Party has read and fully understands this Agreement.

(b)    *Product Warranty; Remedy.*

(1)    Biomerics warrants that, as of the delivery date of each Product to Nimbus or its customer in accordance with this Agreement: (A) such Product is new (i.e., not re-furbished); (B) Biomerics has title to such Products and has conveyed such title to Nimbus in accordance with the terms of this Agreement; and (C) such Product is free from all security interests, liens and similar encumbrances, except any security interest, liens or encumbrances caused by acts or omission of Nimbus.

(2)    Biomerics warrants that each Product purchased under this Agreement: (A) is free from defects in material, manufacturing and workmanship; and (B) conforms to the Specifications as in effect as of the delivery date of such Product to Nimbus or its customer.  The period of this warranty for each Product shall begin on the date of delivery of such Product to Nimbus or its customer hereunder and shall end on the expiration date designated on each  unit of Product.

(3)     Nimbus may return any non-conforming Product for replacement at Biomerics's sole expense if such Product is mislabeled, shows visible defects, or does not comply with the requirements of an Order.  In addition, if any Product fails to satisfy the warranties set forth in this Section 6.1(b) (or otherwise fails to comply this Agreement), whether or not resold or delivered by Nimbus to a customer, Nimbus will have the right to return the alleged non-conforming Product to Biomerics. Such alleged non-conforming Product may be held for Biomerics's instructions and may be returned to Biomerics at Biomerics's expense, with a proper authorization to return (ATR). ATRs must be requested in writing and Product may not be return until Nimbus receives an ATR in writing from Biomerics.  At Biomerics's option, Biomerics will either promptly repair or replace the defective Product (subject to Biomerics's right to contest the Product return as provided below). Any Product repaired or replaced under warranty pursuant to this Agreement shall be warranted for the remainder of the original warranty period of that Product.  The repair and replace remedy set forth in this Section 6.1(b)(3) is the sole and exclusive remedy for any failure of the Product to satisfy the warranties set forth in Sections 6.1(b)(1) and (2); provided that, the forgoing shall not affect the indemnification rights of Nimbus for third party claims as provided under Section 7.   Notwithstanding the above, Biomerics may contest the return of any Product by providing Nimbus written notice of such contest within twenty (20) days of Biomerics's receipt of such alleged non-conforming Product.  Promptly thereafter, such contest shall be resolved through testing by an independent laboratory mutually agreed by the Parties and if Biomerics prevails Nimbus shall pay Biomerics's reasonable costs and expenses in connection therewith. The warranties contained in this Section 6.1(b) will survive any inspection, delivery, acceptance, payment and expiration or termination of this Agreement, and such warranties will run to Nimbus, its customers and their successors and assigns.

(c)     **DISCLAIMER OF ALL OTHER WARRANTIES.**  EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE IN THIS AGREEMENT, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER TO THE OTHER PARTY, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND ALL SUCH WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW.

**7.    Indemnification; Insurance; Liability Limitation.**

7.1     <u>Indemnification by Nimbus</u>.  Nimbus shall defend, indemnify, and hold harmless Biomerics and its Affiliates, and their respective directors, officers, employees, and equity holders ("<u>Biomerics Indemnitees</u>") from and against any and all liabilities, damages, costs, losses, and expenses (including reasonable attorney's fees) suffered or incurred by any Biomerics Indemnitees, resulting from any claim, suit or proceedings made or brought by a third party, to the extent arising out of or relating to any of the following, whether actual or alleged: (a) any breach of Nimbus's obligations under this Agreement, (b) any negligence or willful misconduct of Nimbus or its Affiliates, (c) any failure to comply with applicable Laws by Nimbus or its Affiliates, (d) any defect in the

15

design of any Product so long as such Product conforms to the Specifications approved by Nimbus in writing and has not been modified or used in any application or with any device for which it was not designed, where such defect would not have occurred but for such modification or misuse, or (e) any infringement or misappropriation of any Intellectual Property of a third party to the extent based upon the design of any Product so long as such Product conforms to the Specifications approved by Nimbus in writing and has not been modified or used in any application or with any device for which it was not designed, where such infringement or misappropriation would not have occurred but for such modification or misuse. Nimbus shall have no indemnification obligations under this Section 7.1 for any claim, suit or proceeding to the extent arising or resulting from (1) any breach of Biomerics's obligations under this Agreement, (2) any negligence or willful misconduct of Biomerics or its Affiliates or contractors, (3) any failure to comply with applicable Laws by Biomerics or its Affiliates or (4) any defect in workmanship or materials of any Products supplied by Biomerics hereunder or any non-conformance of any of the Products supplied by Biomerics hereunder with the warranties set forth in Section 6.1(b).

7.2    Indemnification by Biomerics.    Biomerics shall defend, indemnify, and hold harmless Nimbus and its Affiliates, and their respective directors, officers, employees, and equity holders ("Nimbus Indemnitees") from and against any and all liabilities, damages, costs, losses, and expenses (including reasonable attorney's fees) suffered or incurred by any Nimbus  Indemnitees, resulting from any claim, suit or proceedings made or brought by a third party, to the extent arising out of or relating to any of the following, whether actual or alleged: (a) any breach of Biomerics's obligations under this Agreement, (b) any negligence or willful misconduct of Biomerics or its Affiliates or contractors, (c) any failure to comply with applicable Laws by Biomerics or its Affiliates or its contractors, or (d) any defect in workmanship or materials of any Products supplied by Biomerics hereunder or any non-conformance of any of the Products supplied by Biomerics hereunder with the warranties set forth in Section 6.1(b).

7.3    Indemnification Procedure.    A claim to which indemnification applies under this Section 7 shall be referred to herein as an "Indemnification Claim". If a Party (the "Indemnified Party") intends to claim indemnification under this Section 7, the Indemnified Party shall notify the other Party (the "Indemnitor") in writing promptly upon becoming aware of any claim that may be an Indemnification Claim (it being understood and agreed, however, that the failure by the Indemnified Party to give such notice shall not relieve the Indemnitor of its indemnification obligation under this Agreement except and only to the extent that the Indemnitor is actually prejudiced as a result of such failure to give notice). The Indemnitor shall have the right to assume and control the defense of the Indemnification Claim at its own expense with counsel selected by the Indemnitor; provided, however, that the Indemnified Party shall have the right to retain its own counsel, with the fees and expenses to be paid by the Indemnified Party. If the Indemnitor does not assume the defense of the Indemnification Claim as described in this Section 7.3, the Indemnified Party may defend the Indemnification Claim but shall have no obligation to do so. The Indemnified Party shall not settle or compromise the Indemnification Claim without the prior written consent of the Indemnitor, and the Indemnitor shall not settle or compromise the Indemnification Claim in any manner

16

which would have a material adverse effect on the Indemnified Party's rights under his Agreement without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld, delayed or conditioned). The Indemnified Party shall reasonably cooperate with the Indemnitor at the Indemnitor's expense and shall make available to the Indemnitor all pertinent information under the control of the Indemnified Party, which information (to the extent it is Confidential Information) shall be subject to Section 9.

7.4    <u>Insurance</u>. Each Party, at its sole expense, will maintain in effect the following policies of insurance during the Term of this Agreement: (a) all insurance coverage required by federal and state law, including workers' compensation and employer's liability insurance, at or above the statutory minimum limits, (b) commercial general liability insurance with limits of not less than $1,000,000 per occurrence, providing coverage for personal injury or death and injury to or destruction of property, including loss of use, and (c) product liability insurance and product recall insurance with not less than $1,000,000 limit covering the Products. All insurance must be carried by companies rated "A, X" or better by A.M. Best. All liability insurance of a Party will designate the other Party as an additional insured. All such insurance must be primary and require the issuer to respond and pay prior to any other available coverage. Each Party agrees that it and anyone claiming by, through, under or in its behalf will have no claim, right to action, or right of subrogation against the other Party based on any loss or liability insured against under the foregoing insurance. Each Party will provide the other Party with certificates or adequate proof of the foregoing insurance annually upon renewal of such insurance or at the other Party's request. Such insurance policies or endorsements of a Party will entitle the other Party to receive notice at least 30 days prior to any cancellation (including for nonrenewal) or change. These insurance requirements will not serve to limit or relieve a Party of any obligations or liabilities under the Agreement. Notwithstanding the foregoing, Nimbus shall not be required to comply with this Section 7.4 until the first commercial sale of the Nimbus Device in the United States to an end-user after receipt of 510(k) clearance.

7.5    <u>Liability Limitation</u>. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, EXCEPT WITH RESPECT TO A BREACH OF THE CONFIDENTIALITY OBLIGATIONS UNDER SECTION 9 HEREOF OR A CLAIM OF A THIRD PARTY SUBJECT TO INDEMNIFICATION UNDER SECTIONS 7.1 OR 7.2, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES CONCERNING THE SUBJECT MATTER HEREOF, INCLUDING FOR LOSS OF PROFITS, OR LOSS OF OPPORTUNITY OR USE OF ANY KIND, SUFFERED BY THE OTHER PARTY OR ITS AFFILIATES, WHETHER IN CONTRACT, TORT OR OTHERWISE.

## 8.    Term and Termination.

8.1    <u>Term</u>. This Agreement shall become effective as of the Effective Date and continue in force for a period of five (5) years from the date of the first commercial sale of the Nimbus Device in the United States to an end-user after receipt of 510(k)

clearance, unless earlier terminated as provided in this Agreement (the "Initial Term"). Nimbus shall have the option to extend the Initial Term for successive one (1) year periods (each, a "Renewal Term," and together with the Initial Term, the "Term"), upon providing written notice to Biomerics not less than ninety (90) days prior to the conclusion of the Initial Term or the then current Renewal Term, as applicable.

8.2    Termination.  This Agreement may be terminated:  (i) by either Party immediately upon written notice, if the other Party commits a material breach of any provision of this Agreement and such breach continues uncured for a period of thirty (60) days following written notice from the non-breaching Party; or (ii) by either Party, effective immediately, if the other Party files, or has filed against it, a petition for voluntary or involuntary bankruptcy or pursuant to any other insolvency Law or makes or seeks to make a general assignment for the benefit of its creditors or applies for or consents to the appointment of a trustee, receiver or custodian for its or a substantial part of its property.

8.3    Termination by Nimbus.

(a)  This Agreement may be terminated by Nimbus immediately upon written notice upon Biomerics losing its status as an FDA registered medical device manufacturer.

(b)  Nimbus may terminate this Agreement immediately upon written notice in the event of a Change of Control of Nimbus or Biomerics or either of their respective Party Parent Companies. If Nimbus elects to terminate this Agreement pursuant to this Section 8.3(b) upon a Change of Control of Nimbus or its Party Parent Company, Nimbus shall pay Biomerics the "Change of Control Termination Fee" (as defined below) within 60 days of the effective date of the termination of this Agreement. The Change of Control Termination Fee shall be deemed liquidated damages and not a penalty. The Parties acknowledge and agree that the Change of Control Termination Fee is a reasonable estimate of any damages Biomerics may suffer or   incur as a result of Nimbus's termination of this Agreement pursuant to Section 8.3(b) upon a Change of Control of Nimbus or its Party Parent Company, considering all of the circumstances existing as of the Effective Date, the relationship of this sum to the range of harm to Biomerics that reasonably could be anticipated and the anticipation that proof of actual damages would be impractical or extremely difficult.  For the avoidance of doubt, no Change of Control Termination Fee or other fee or payment shall be due from Nimbus to Biomerics if Nimbus terminates this Agreement pursuant to Section 8.3(b) upon a Change of Control of Biomerics or its Party Parent Company or if Nimbus terminates this Agreement pursuant to any other rights it may have under this Agreement or otherwise. As used herein, the term "Change of Control Termination Fee" shall mean an amount equal to $400,000 less $100,000 for each 25,000 units of Product purchased by Nimbus hereunder so that if Nimbus purchases 100,000 units of Product, the Change of Control Termination Fee shall be zero.

8.4     Effect of Expiration and Termination. Notwithstanding anything else contained herein to the contrary, at Nimbus' option, upon expiration or termination of this Agreement,

(a)   Biomerics shall manufacture and ship, and Nimbus shall purchase from Biomerics in accordance with the terms and conditions of this Agreement, all Product subject to purchase orders then outstanding upon such expiration or termination; and,

(b)   Nimbus shall have the right, on a non-exclusive basis,  to continue to order Product from Biomerics at then current pricing and terms as provided herein and to Biomerics shall accept such orders and manufacture and supply such Product for up to 6 months after such termination or expiration.

8.5     Survival. Expiration or termination of this Agreement shall not relieve the Parties of any obligation accrued before such expiration or termination.  Upon expiration or termination of this Agreement, all rights and obligations of the Parties hereunder shall be terminated except any right or obligations of either Party which is expressly stated in Section 8.4, this Section 8.5 or elsewhere in this Agreement to survive the expiration or termination.  The following provisions shall survive the expiration or termination of this Agreement: Sections 2.6, 2.7, 3.2, 3.3, 3.4, 3.6, 3.10, 4.2(a), (b) and (e), 4.5, 5.1, 5.2, 5.3, 5.6, 6, 7, 8.4 and 8.5 and Sections 1 and 9 (to the extent applicable to the foregoing surviving Sections).

**9.    Confidential Information.**

9.1    Confidentiality.

(a)     During the Term of this Agreement, and for five (5) years thereafter, each Party shall hold in confidence, and may not use for purposes other than those authorized by this Agreement or disclose to a third party (except as specifically set forth herein or with the express prior written consent of the other Party) any and all Confidential Information of the other Party.  Notwithstanding anything herein to the contrary, and by way of clarification and for the avoidance of doubt, the Product Intellectual Property shall be deemed the Confidential Information of Nimbus.

(b)     Without limiting the generality of the foregoing, each Party may disclose Confidential Information to those employees, contractors or agents of such Party or its Affiliates who need to receive the Confidential Information in order to further the activities contemplated in this Agreement.  Each Party shall take sufficient precautions to safeguard the Confidential Information of the other Party, including obtaining appropriate commitments and enforceable confidentiality agreements.

(c)     Each Party understands and agrees that the wrongful disclosure of Confidential Information of the other Party may result in serious and irreparable damage to the other Party, that the remedy at Law or any breach of this covenant may be inadequate, and that the Party seeking redress hereunder shall be entitled to injunctive relief, without prejudice to any other rights and remedies to which such Party may be entitled.

19

(d)    The above notwithstanding, a Party may disclose specific Confidential Information of the other Party to the extent such disclosure is required by applicable Law including by court order; provided, that, in each case, the Party subject to such disclosure requirement informs the other Party of such requirement reasonably in advance of such disclosure and permits the other Party, at its expense, a reasonable opportunity to attempt, by appropriate legal means, to limit such disclosure. Any disclosure made in such case shall be no more extensive than is necessary to meet the minimum legal requirement imposed on the Party.

(e)    Upon expiration or termination of this Agreement, and at the written request of the disclosing Party, the receiving Party shall return all Confidential Information of the disclosing Party (including all copies, excerpts and summaries thereof contained on any media) or destroy such Confidential Information at the option of the disclosing Party; provided, however, that each Party may keep one archival copy of such Confidential Information in its legal files to monitor compliance herewith or to exercise its ongoing and/or surviving rights under this Agreement or as necessary to comply with applicable law.

9.2    No Publicity. Unless mutually agreed to by the Parties, the Parties will not make any advertisement, news release, public announcement, denial or confirmation regarding any aspect of this Agreement, or that the Parties have entered into an Agreement.

## 10.  Miscellaneous Provisions

10.1    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties' successors and permitted assigns, if any.  Neither Party shall assign any of its rights or delegate any of its duties under this Agreement to any other Person, whether by agreement or by operation of law, without the express written consent of the other Party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, Nimbus may assign this Agreement to an Affiliate or to a successor to all or substantially all of the assets or business of Nimbus without the consent of Biomerics.

10.2    Relationship of the Parties.  The Parties are independent contractors, and nothing in this Agreement shall be construed to constitute any Party as the agent or representative of the other Party or the Parties as partners, joint venturers, co-owners or as participants in any other joint or common undertaking.

10.3    Force Majeure.  Any cause or circumstance of whatever nature which prevents or delays performance by a Party of its obligations hereunder, including any riot, labor dispute, strike or civil disturbance, or any Law or action of a Governmental Authority, which cause or circumstance is not within the reasonable control of the Party chargeable, and which cannot by the exercise of reasonable diligence by such Party be prevented or overcome, shall extend the time for performance thereof, provided such cause or circumstance was the proximate cause of the failure to perform.

10.4    Cooperation.  The Parties agree promptly to cooperate in good faith to carry out the provisions of this Agreement and the activities contemplated thereby and shall also cooperate in good faith to resolve any disputes or differences which may arise in connection with the provisions hereof and the activities contemplated hereby. The Parties agree to execute and deliver all documents, provide all information, and take or forebear from all such actions as may be necessary to achieve the purposes of this Agreement.

10.5    Notices.  All notices, consents and approvals under this Agreement must be delivered in writing by courier, by overnight delivery service (e.g., Federal Express), by facsimile (with confirmation of receipt by intended recipient), or by certified or registered mail (postage prepaid and return receipt requested), to the other party at the address set forth below, and will be effective upon receipt or five business days after being deposited in the mail as required above, whichever occurs sooner.  Either Party may change its address by giving notice of the new address to the other Party.

Biomerics, LLC                      Nimbus Concepts (Spine), Inc.
Attn: Travis Sessions               Attn: Robert Wright
President and CEO                   President
2700 South 900 West, Suite D        925 Lincoln PH,
Salt Lake City, Utah 84119          Denver, Colorado 80203

10.6    Interpretation; Construction.   Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender, (b) words using the singular or plural number also include the plural or singular number, respectively, (c) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; (d) the terms "Section," "Schedule," and "Exhibit" refer to the specified Section, Schedule, and Exhibit of this Agreement, (e) the terms "include," "includes," or "including" shall be deemed to be followed by the words "without limitation" unless otherwise indicated. Whenever this Agreement refers to a number of days, unless otherwise specified, such number shall refer to calendar days.   The headings in this Agreement are for references purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  This Agreement shall be construed as if each Party has had the opportunity to participate in drafting it and shall not be construed against either Party.

10.7    No Third Party Beneficiaries.  The provisions of the Agreement are for the sole benefit of the Parties hereto and not for any creditor of a Party or for any other Person.

10.8    Modification, Amendment, and Waiver.  No modification or amendment to the Agreement and no waiver of any breach or provision hereof shall be valid unless made in writing signed by duly authorized representatives of the Parties.  Any failure or delay by either Party to exercise or partially exercise any right, power or privilege hereunder shall not be deemed a waiver of any of the rights, powers, or privileges under this Agreement.   The waiver by either Party of a breach of any term, condition, or

provision of this Agreement shall not operate as, or be construed as, a waiver of any subsequent breach thereof.

10.9    Records.    Each Party agrees to keep complete and accurate records of all of its activities under this Agreement, and the other Party shall have the right on reasonable notice during ordinary business hours, at its expense, to examine, and to take copies and excerpts from, such records. Such records shall be preserved and maintained and kept available for inspection pursuant to this Agreement for at least three (3) years from the termination of this Agreement, or any longer period as may be required by Law.

10.10    Governing Law.    This Agreement shall be governed by and construed in accordance with the Laws of the State of Delaware, USA, without giving effect to its choice of law provisions, and, to the extent controlling, the Laws of the United States of America.

10.11    Remedies.    Except as otherwise provided for herein, no remedy conferred by any of the specific provisions of the Agreement is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder, now or hereafter existing at law or in equity or by statute or otherwise. The election of any one or more remedies by Biomerics or Nimbus shall not constitute a waiver of the right to pursue other available remedies.

10.12    Severability.    If any provision in this Agreement is determined by a court of competent jurisdiction to be void, invalid, unenforceable, or illegal, that provision shall be construed, limited, modified or, if necessary, severed, to the extent necessary to eliminate its violability, invalidity, unenforceability, or illegality, and the other provisions of this Agreement shall remain unaffected and continue in full force and effect. The Parties further agree to replace any invalid or severed provision with a new valid provision that has the economic and other effects most similar to the original provision.

10.13    Entire Agreement.    This Agreement constitutes the entire agreement and understanding of the Parties with respect to subject matters hereof and supersedes all prior written and oral communications, agreements, letters of intent, representations, warranties, statements, negotiations, understandings, and proposals, with respect to all such subject matters.

10.14    Counterparts.    This Agreement may be executed in counterparts or with detachable signature pages and shall constitute one and the same instrument binding both Parties as if each signed the same copy. Once this Agreement is signed and delivered by both Parties, either by facsimile, mail, or otherwise, any reproduction made by reliable means (e.g., photocopy, digital scan, or facsimile) shall be deemed an original.

[Remainder of Page Intentionally Left Blank, Signature Page Follows]

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Agreement as of the Effective Date set forth above.

**BIOMERICS, LLC,**
a Utah limited liability company

**NIMBUS CONCEPTS (SPINE), LLC**
A Delaware limited liability company

By: _____

By: _____

Name: Travis Sessions

Name: Robert Wright

Title: President and CEO

Title: President

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Agreement as of the Effective Date set forth above.

BIOMERICS, LLC,
a Utah limited liability company

By: _____

Name: Travis Sessions

Title: President and CEO

NIMBUS CONCEPTS (SPINE), LLC
A Delaware limited liability company

By: _____

Name: Robert Wright

Title: President

**Exhibit A**

Nimbus Device Specifications

| | |
|---|---|
| DDevice Description | The NIMBUS Electrosurgical Radiofrequency Mutitined Expandable Electrode consists of an insulated cannula with an electrically active tip that directs RF energy into target tissues, and a pair of deployable tines which expand the volume of ablation. It is intended for use in radio-frequency (RF) heat lesion procedures for relief of pain. A diagram of the device is included in Figure 2, below. |
| MModel / Accessories / Components | The NIMBUS Electrosurgical RF Multitined Expandable Electrode, product part number NIM17-100-10BB, is described in Figure 2, below. The function and material composition of individual components are described in the Diagrams and Schematics Table below. The NIMBUS device is intended for use with a generator, grounding pad, and RF probe designed to deliver RF energy in a quasi-sinusoidal frequency of 460.8 kHz at a maximum power of 50 W. No other accessories or components are required. |



Figure 2: NIMBUS Electrosurgical Radiofrequency Mutitined Expandable Electrode, Deployed

A-1

Diagrams and
Schematics

Figure 2 highlights the components of the NIMBUS device. A brief description, including component function and features is included in the following table.

| Component | Description/Function/Material |
|---|---|
| Main Hub | **Description**: The Main Hub is a clear polycarbonate hand piece with ergonomic finger grips and male threads.<br><br>**Function and Features**: The Main Hub is the part where the user holds to insert the device. It retains the needle cannula. The part is transparent, which allows the user to visually confirm the advancement and deployment of the tines. The ID of the Main Hub is shaped to prevent rotation of the Advancing Hub. The cylindrical distal end of the Main Hub provides a snug fit for the Protector, discussed below. |
| Advancing Hub | **Description**: The Advancing Hub is a component design to interface with the ID of the Main Hub to advance the tines.<br><br>**Function and Features**: The Advancing Hub retains the deployable tines. Advancement of this part within the Main Hub results in deployment of the tines at the needle tip. Opposite the tines, the component includes an ISO 594-1-compliant female luer, which provides an interface to inject sterile fluids through the device. The Advancing Hub contains a feature that allows it to lock into the Main Hub during manufacture. |
| Spin Collar | **Description**: The Spin Collar, is a hollow cylindrical component with female threads on the ID that mate to corresponding male threads on the Main Hub.<br><br>**Function and Features**: The Spin Collar is designed to snap onto the Advancing Hub to lock the two parts together. Turning the Spin Collar around the Main Hub allows for advancement of the Spin Collar (and thereby the Advancing Hub and tines) relative to the Main Hub. It has ergonomic grip features used to spin the Spin Collar.<br>Reference Volume II, Section 1 Dwg PN-2002. |
| Tines | **Description:** The tines are composed of a stainless steel filament anchored in the Advancing Hub.<br><br>**Function and Features:** Before needle insertion, the tines rest flush with the OD of the needle. After needle insertion, but prior |

Diagrams and
Schematics,
cont'd

| | | |
|---|---|---|
| | | to the ablation, the tines deploy out of the needle tip in order to increase the volume of the lesion. |
| | Cannula Assembly (Insulated) | **Description:** The cannula assembly consists of insulated hypodermic tubing (Cannula) with a custom tip, or tine guide. There is an uninsulated region at the tip.<br><br>**Function and Features:** The cannula assembly is the transdermal section of the device. The uninsulated tip targets RF energy into the target tissue to create the lesion. |
| | Cannula | **Description:** Stainless Steel Hypodermic Tubing.<br><br>**Function and Features:** The Cannula houses the Tines and retains the Tine Guide/Needle Tip. |
| | Tine Guide/ Needle Tip | **Description:** The Tine Guide consists of a sharp needle tip.<br><br>**Function:** During deployment, the Tine Guide directs the tines in the correct orientation. It also serves as the Needle Tip, providing transdermal access to the target tissues. |
| | Insulation | **Description:** The Insulation is a thin layer of PET that resides on the exterior of the Cannula.<br>**Function:** The insulation protects the user and patient from injury due to errant electrical discharge. |
| | Protector | **Description:** HDPE tubing placed over the length of the Cannula. This component is packaging and is removed before the procedure and is not shown in Figure 2.<br>**Function:** Prevents damage to the Tine Guide as well as the packaging during shipping. |

A-3

Diagrams and
Schematics,
cont'd

| Component | Description/Function/Material |
|---|---|
| O Ring | **Description:** The O Ring is a torus, or doughnut-shaped soft silicone component. The O Ring is an internal component and is not shown in Figure 2.<br><br>**Function and Features:** Compression of the O Ring between the Advancing and Main Hubs when the tines are advanced provides for sealing of the assembly, allowing the user to inject sterile fluids into the target tissue. |
| Vented Luer Cap | **Description:** The Vented Luer Cap fits over the female luer and contains a through-hole. This component is packaging and is removed before the procedure and is not shown in Figure 2.<br><br>**Function and Feature:** The Vented Luer Cap protects the luer fitting during shipping. The through-hole in the component allows for EO sterilization. |

Device Design Requirements/ Performance Specifications

The NIMBUS Electrosurgical Radiofrequency Mutitined Expandable Electrode consists of an insulated cannula with an electrically active tip that directs RF energy into target tissues. It is intended for use in radio-frequency (RF) heat lesion procedures for relief of pain. The device design requirements and corresponding performance specification are outlined in the table below.

| Design Requirements | Performance Specifications |
|---|---|
| 1. The NIMBUS device must be compatible with traditional motor/sensory stimulation protocols for placement of RF ablation devices. | In order for motor/sensory stimulation to be effective, the lesion propagation distance (the distance from the active surface of the electrode to the distal lesion boundary) with the NIMBUS device must be equivalent to that of the Baylis predicate device. |
| 2. The NIMBUS device must be capable of insertion into target tissues. | The insertion requirement is satisfied by conformance to sections 12 and 13.1 of ISO 7864, which describes requirements for cannula retention forces and tip sharpness for hypodermic needles. |
| 3. The NIMBUS device must be capable of performing injections. | The injection requirement is satisfied by conformance to ISO 594-1, which describes the requirements for standard luer fittings used in injection devices. This includes taper angles, dimensions, and freedom from leak requirements. In addition to ISO 594-1, an internal protocol was developed to test the pressure at leak requirement of the O Ring seal. |

A-5

Device Design Requirements/ Performance Specifications

| Design Requirements | Performance Specifications |
|---|---|
| 4. During the procedure, the NIMBUS device must protect the user and patient from errant electrical discharge. | This requirement is satisfied by conformance to applicable sections of IEC 60601-2-2 ed 5.0, which detail the specific requirements for the basic safety and essential performance of high frequency surgical equipment and accessories. Using test methods and acceptance criteria in this standard, the device was tested for High Frequency Leakage Current, High Frequency Dielectric Strength, Mains Frequency Dielectric Strength, Excessive Heating, Sharp Edges, and Drop Resistance. |
| 5. The NIMBUS device must be capable of sterilization, maintaining package integrity through distribution, and must be demonstrated to be biocompatible. | This requirement is satisfied by conformance of the device to the following standards, which apply to the sterilization requirements, biocompatibility, and packaging integrity for the product:<br><br>ISO 11135-1:2007<br>EN 556:2006<br>ISO 10993 -1, -5, -7, and -10 as modified by FDA Memo G95-1<br>ISO 11607-1 and -2<br>ASTM D 4169:2009 |
| The NIMBUS device must create safe and effective lesions using commercially available RF generators and probes. | In order to create safe and effective lesions, the lesions created with the NIMBUS device must be of equivalent or greater size and reach equivalent temperatures compared to the Baylis predicate. |

A-6

EXECUTION COPY

**Exhibit B**

RS Demo Purchase Order

Page: 1

**International Rehabilitative Sciences, Inc.**
dba RS Medical
PO Box 872977
Vancouver, WA  98687-9912

| | |
|---|---|
| To: | NIMBUS CONCEPTS (SPINE), LLC.<br>2700 SOUTH 900 WEST<br>SALT LAKE CITY, UT 84019 |

**PURCHASE ORDER**

Purchase Order Number:   P028116
Purchase Order Date:       05/03/12

Ship To:  RS Medical
14001 SE 1st Street
Vancouver, WA  98684

| | |
|---|---|
| Confirm To | |
| Buyer | Allen White |
| Phone | 360-449-4573 |
| Fax | 360-604-2677 |
| Pay to Vendor | NIM001 |

Ship Via
Receive By
Terms          Net 30 Days

Approved By: _____
Date: _5-3-12_

Please check the appropriate box:

☐  CONFIRMING PO, DO NOT DUPLICATE
☒  ORIGINAL PURCHASE ORDER

| Item ID | Vendor Item No. | Description | Expected Receipt Date | Unit | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|
| 14300 | | Inventory Deposit-Nimbus 100mm Electrode<br>Not for Human Use<br>NIM17-100-100BB-NHU - Rev: 02 | 05/11/12 | EA | 500 | 25.00 | 12,500.00 |
| 14300 | | Inventory Deposit-Nimbus 100mm Electrode<br>NIM17-100-100BB - Rev: 02 | 05/11/12 | EA | 500 | 25.00 | 12,500.00 |
| | | In the event Nimbus does not proceed to<br>a final Agreement at its choice (and at no<br>fault of RS Medical), Nimbus shall refund<br>the $25,000 and the RS Medical Demo<br>Purchase Order shall be deemed cancelled. | | | | | |

Transferred to page 2.................              25,000.00

Page: 2

**International Rehabilitative Sciences, Inc.**
dba RS Medical
PO Box 872977
Vancouver, WA  98687-9912

# PURCHASE ORDER

Purchase Order Number:   P028116
Purchase Order Date:     05/03/12

To:   NIMBUS CONCEPTS (SPINE), LLC.
      2700 SOUTH 900 WEST
      SALT LAKE CITY, UT 84019

Ship To:  RS Medical
          14001 SE 1st Street
          Vancouver, WA  98684

| | |
|---|---|
| Ship Via | |
| Receive By | |
| Terms | Net 30 Days |

Confirm To
Buyer          Allen White
Phone          360-449-4573
Fax            360-604-2677
Pay to Vendor  NIM001

| Item ID | Vendor Item No. | Description | | Expected Receipt Date | Unit | Quantity | Unit Price | Total Price |
|---------|-----------------|-------------|---|-----------------------|------|----------|------------|-------------|
| | | Transferred from page 1............... | | 25,000.00 | | | | 25,000.00 |

Approved By: _____
Date: _5-3-12_

Please check the appropriate box:
☐ CONFIRMING PO, DO NOT DUPLICATE
☒ ORIGINAL PURCHASE ORDER

Total:                25,000.00

**CONFIRMATION OF THIS PURCHASE ORDER IS REQUIRED**
**Confirm part number, quantity, ship date and price.**
Acceptance of this PO is based on supplying the purchased goods as specified by RS Medical.
No substitutions or changes to the RS Medical specifications are authorized and will not be shipped
without prior approval from RS Medical.

By: _____          Date: _____

EXECUTION COPY

**Exhibit C**

RS Stocking Order

**PURCHASE ORDER**

Page: 1

ORIGINAL

Approved By: _____
Date: 6/1/12                          5/1/2012

Please check the appropriate box:
☐ CONFIRMING PO, DO NOT DUPLICATE
☒ ORIGINAL PURCHASE ORDER

Purchase Order Number:  P028252
Purchase Order Date:  06/01/12

To:  NIMBUS CONCEPTS (SPINE), LLC.
925 LINCOLN ST, PH
DENVER, CO  80203

Ship To:  RS Medical
14001 SE 1st Street
Vancouver, WA 98684

Confirm To
Buyer       Allen White
Phone       360-449-4573
Fax         360-604-2677
Pay to Vendor  NIM001

Ship Via
Receive By
Terms

| Item ID | Vendor Item No. | Description | Expected Receipt Date | Unit | Quantity | Unit Price | Total Price |
|---------|-----------------|-------------|----------------------|------|----------|-----------|-------------|
| 14300   |                 | Nimbus Electrosurgical Radiofrequency Multitined Expandable Electrode (RF ME Electrode). The build quantities, delivery timing and electrode (i.e by lengths and brands) of the initial 10,000 units will be determined via market research and OEM supplier data, commercialization planning and clinician feedback from the physician evaluation. Anticipated completion date: June 29, 2012 Final part#'s (sizes) and ship date to be determined at a later time (TBD). No shipments are to be made prior to FDA 510 K approval. Terms:34% upfront, 33% due net 30 days post shipment 33% due net 60 day post shipment The definitive agreement supersedes the terms of this PO. | 06/01/12 | EA | 10,000 | 25.00 | 250,000.00 |

Total:  250,000.00

**CONFIRMATION OF THIS PURCHASE ORDER IS REQUIRED**
**Confirm part number, quantity, ship date and price.**
Acceptance of this PO is based on supplying the purchased goods as specified by RS Medical.
No substitutions or changes to the RS Medical specifications are authorized and will not be shipped
without prior approval from RS Medical.

By: _____          Date: _____

EXECUTION COPY

**Exhibit D**

Regulatory Registration Purchase Orders





September 29, 2011

Dr. Robert Wright
Dr. Scott Brandt
Nimbus Medical

Dear Rob and Scott,

Please find attached a quote to complete the CE mark for the Nimbus Device.

1. Technical File Preperation:  $10,000.
   a.    Risk Assessment.  Must include the requirements of the European Medical Directive.
   b.    European Label Standard
   c.    Product Test Results – this is the same as the 510(k), just formatted to the Directive
   d.    Clinical Evaluation Report – this deliverable is unique to the CE mark and will require a scientific review, excise, and third party review.
   e.    Compilation and submission to the notified body.
2. Notified Body Audit: $17,500.
   a.    The requirement is to contract an authorized notified body to audit our quality system and documentation against the European Medical Device Directive.  This is a 3 day audit of our facility and records.
   b.    Please also note that as a result of this audit and submission, Biomerics would be identified as the manufacturer of record by the notifying body.  We are happy to play this role, but would require a letter of indemnification from Nimbus prior to the sell of any product.
3. Translation Services.  $2,500.  $500.00 per translation into German, French, Spanish, Italian, and Dutch

TOTAL: $30,000

**TERMS:**
- 50% down with submission of PO.
- Remainder due upon submission of the file and scheduling of audit

Regards,


Amanda Crowell
CSR
Biomerics
801-355-2705



# QUOTATION

**To:**

Dr. Rob Wright
Dr. Scott Brandt
Nimbus LLC
Denver, CO

Quote #: 10/30/2011 v1
Date:  6/1/2012
Nimbus Validation Testing

Biomerics Contract Agreement

Rob and Scott,

Please find below the outline and timeline to complete the remaining testing and validation work on the Nimbus device.  If in agreement, please sign the agreement below and return a copy.  I will forward a detailed Gantt chart after re-assembling the team.

| Item | Description | Price | Completion Date |
|---|---|---|---|
| 1.1.  Single Cavity Tools | Main Hub, Advancing Hub, Spin Collar | $35,000 | Dec 19, 2011 |
| | Deliver Prototype | - | Jan 1, 2012 |
| 1.2  510(k) Validation Testing | See larger quote for detail | $89,865 | |
| | Production of 250 samples for testing | - | Nov 11, 2011 |
| | Functional Device Test Report  (in-house) | - | Dec 21, 2011 |
| | Electrical Testing | - | Jan 1, 2012 |
| | Sterilization Report | - | Feb 11, 2012 |
| | Packaging Validation | - | Feb 1, 2012 |
| | Biocompatibility Report | - | Feb 1, 201 |
| 1.3  510(k) Submission | Final Submission to FDA | -- | Feb 17, 2012 |

- Please note that the completion dates are based on timely feedback and support during the project.  It is also dependant on third party suppliers.  Biomerics will proactively communicate any changes in timeline caused by any third party delays.
- Payment Terms:
    - $65,800 down, upon Execution of this agreement
    - $21,365 upon completion of biocompatibility and electrical testing
    - $35,000 upon completion of the tool and delivery of an approved prototype.

Agreed and Accepted:

Dr. Robert Wright
Dr. Scott Brandt
October 11, 2011

Agreed and Accepted:

Travis Sessions
President
October 11. 2011

Purchase Terms and Limiting Conditions: All orders are subject to the following terms and conditions. Biomerics HTP-Meds, LLC is not responsible for the use of any of the information contained, or any product mentioned in this document, and you must make your own determinations of its suitability and completeness for your own use, and you should conduct your own testing. All expressed and implied warranties, including any implied warranty of merchantability and fitness for a particular purpose and warranty arising out of the parties' course of dealing are hereby disclaimed by HTP-Meds, LLC. The products are being sold "As Is". HTP-Meds, LLC shall not be liable for any incidental or consequential damages. Nothing herein shall be construed as a license or sublicense to operate under any HTP-Meds, LLC or third party owned patent or as a warranty against infringement of any patent. By placing an order for any of these products and/or by accepting their delivery, the purchaser agrees to the above.



**BIOMERICS**

2700 South 900 West
Suite D
Salt Lake City, Utah
84119
TEL 801.355.2705
FAX 801.355.3045
www.biomerics.com

# Invoice

Invoice Number:
35049

Invoice Date:
Apr 17, 2012

Page:
1

Sold To:
NIMBUS
925 LINCOLN PH
DENVER, CO 80203

Ship to:

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| NIMBUS | 10266 VALIDATION | Net Due | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | | | **4/17/12** |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| | | Due upon completion of biocompatibility and electrical testing | | 21,365.00 |
| | | Due upon completion of the tool and delivery of an approved prototype | | 35,000.00 |

| | |
|---|---|
| Subtotal | 56,365.00 |
| Sales Tax | |
| Total Invoice Amount | 56,365.00 |
| **Payment/Credit Applied** | |
| **TOTAL** | 56,365.00 |

Check/Credit Memo No:



2700 South 900 West
Suite D
Salt Lake City, Utah
84119
TEL 801.355.2705
FAX 801.355.3045
www.biomerics.com

# Invoice

Invoice Number:
35048

Invoice Date:
Apr 17, 2012

Page:
1

**Sold To:**
NIMBUS
925 LINCOLN PH
DENVER, CO 80203

**Ship to:**

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| NIMBUS | NIM92911 | Net Due | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | | | 4/17/12 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 1.00 | | 50% DUE NIM92911 TECH FILE PREP, NOTIFIED BODY AUDIT & TRANSLATION SERVICES | 15,000.00 | 15,000.00 |

| | | |
|---|---|---|
| Subtotal | | 15,000.00 |
| Sales Tax | | |
| Total Invoice Amount | | 15,000.00 |
| **Payment/Credit Applied** | | |
| **TOTAL** | | 15,000.00 |

Check/Credit Memo No:

# Exhibit 2

**BIOMERICS UTAH**
**2700 SOUTH 900 WEST SUITE D**
**SALT LAKE CITY  UT  84119**
**1-801-355-2705  Fax: 1-801-355-3045**

# INVOICE

| 3071-BIO | 9/30/2014 |
|---|---|

*Remit To:*

**Bill To:**

INTERNATIONAL REHABILITATIVE SCIENCES, INC
DBA RS MEDICAL
PO BOX 872977
VANCOUVER WA  98687-9912 UNITED STATES

**Ship To:**

RS MEDICAL
14001 SE 1ST STREET
VANCOUVER WA  98684 UNITED STATES

| **Terms:** NET 30 DAYS | **Due Date:**  10/30/2014 |
|---|---|

| Quantity | Item Number | Rev | Description | | Price | Extension |
|---|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB | |
| 1,640.00 | 874-0002-00 | 06 | NIMBUS MT RF ELCTRDE 100MM | | 25.000000 EACH | 41,000.00 |
| 15440-BIO | 9/30/2014  P030250 | | 2/27/2014 | UPS GROUND | COLLECT | |
| | Misc. Comment: | 1) RELEASE 2 PER LETTER OF UNDERSTANDING DATED 2/24/14 | | | | |
| | | 2) DELIVERY DATES TBD BETWEEN MARCH 1ST AND OCT. 1ST, 2014 | | | | |
| | | 3) ALL ORDERS C/O BIOMERICS | | | | |
| 250.00 | 874-0003-00 | 06 | NIMBUS MT RF ELCTRDE 100MM-CS | | 25.000000 EACH | 6,250.00 |
| 15440-BIO | 9/30/2014  P030250 | | 2/27/2014 | UPS GROUND | COLLECT | |
| | Misc. Comment: | | | | | |

All Prices Are Shown in US Dollar

*Thank You*

| Subtotal: | 47,250.00 |
|---|---|
| Tax: | 0.00 |
| Freight: | 0.00 |
| Total: | 47,250.00 |

**BIOMERICS UTAH**
**2700 SOUTH 900 WEST SUITE D**
**SALT LAKE CITY  UT  84119**
**1-801-355-2705  Fax: 1-801-355-3045**

| **INVOICE** | |
|---|---|
| 3511-BIO | 10/31/2014 |

*Remit To:*        ,

| Bill To: |
|---|
| INTERNATIONAL REHABILITATIVE SCIENCES, INC<br>DBA RS MEDICAL<br>PO BOX 872977<br>VANCOUVER WA  98687-9912 UNITED STATES |

| Ship To: |
|---|
| RS MEDICAL<br>14001 SE 1ST STREET<br>VANCOUVER WA  98684 UNITED STATES |

| **Terms:** NET 30 DAYS | **Due Date:**  11/30/2014 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB | |
| 1,460.00 | 874-0002-00 | 06 | NIMBUS MT RF ELCTRDE 100MM | 25.000000 EACH | 36,500.00 |
| 15849-BIO | 10/31/2014  P030250 | | 2/27/2014    UPS GROUND | COLLECT | |

Misc. Comment:   1) RELEASE 2 PER LETTER OF UNDERSTANDING DATED 2/24/14
2) DELIVERY DATES TBD BETWEEN MARCH 1ST AND OCT. 1ST, 2014
3) ALL ORDERS C/O BIOMERICS

All Prices Are Shown in US Dollar

*Thank You*

| Subtotal: | 36,500.00 |
|---|---|
| Tax: | 0.00 |
| Freight: | 0.00 |
| Total: | 36,500.00 |

**BIOMERICS UTAH**
**2700 SOUTH 900 WEST SUITE D**
**SALT LAKE CITY  UT  84119**
**1-801-355-2705  Fax: 1-801-355-3045**

**INVOICE**

| 3667-BIO | 11/20/2014 |

*Remit To:*          ,

| Bill To: | Ship To: |
|---|---|
| INTERNATIONAL REHABILITATIVE SCIENCES, INC<br>DBA RS MEDICAL<br>PO BOX 872977<br>VANCOUVER WA  98687-9912 UNITED STATES | RS MEDICAL<br>14001 SE 1ST STREET<br>VANCOUVER WA  98684 UNITED STATES |

| **Terms:** NET 30 DAYS | **Due Date:**  12/20/2014 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB | |
| 500.00 | **550-0103-00** | | **NIMBUS 5-PK SHIPPER** | **5.000000** EACH | 2,500.00 |
| 15916-BIO | 11/13/2014 | P030611 | 10/16/2014 | UPS GROUND | COLLECT |
| | Misc. Comment: | | | | |

All Prices Are Shown in US Dollar

| Subtotal: | 2,500.00 |
|---|---|
| Tax: | 0.00 |
| Freight: | 0.00 |
| **Total:** | **2,500.00** |

*Thank You*

# Exhibit 3

WILLIAMS KASTNER ▌▌▌◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.   29491
MATTER NO.   0101

January 28, 2015
INVOICE #: 518015-507855

FOR PROFESSIONAL SERVICES RENDERED THROUGH 12/31/14

MATTER NAME:          RS Medical

| 12/05/14 | Daniel A. Brown | 1.2 | Review materials and correspondence from client re: dispute with RS Medical; telephone conference and correspondence with Travis Sessions re same; interoffice conference (DBrown/SLehr) re: collection efforts needed. |
| 12/05/14 | Daniel A. Brown | 0.3 | Telephone conference with Mr. Sessions re: underlying issue and collection action. |
| 12/22/14 | Daniel A. Brown | 1.2 | Correspondence from Mr. Sessions re: underlying documentation of dispute; review materials from client for collection efforts. |

Total Hours          2.7

CURRENT FEES                                                                                  $1,080.00

DISBURSEMENTS THROUGH 12/31/14

    On-Line Research                                                          10.66

CURRENT DISBURSEMENTS                                                                         $10.66

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 2.7 | 400.00 | 1,080.00 |
| TOTAL ALL TIMEKEEPERS | 2.7 | | 1,080.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                                 $1,090.66

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER™
█▌█▌█◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

February 23, 2015
INVOICE #: 519030-509497

FOR PROFESSIONAL SERVICES RENDERED THROUGH 01/31/15

MATTER NAME:            RS Medical

| 01/16/15 | Daniel A. Brown | 3.4 | Review agreement and invoices, research corporate nature of defendant, prepare and revise complaint and demand letter. |
| 01/19/15 | Daniel A. Brown | 1.2 | Review and revise compliant and demand letter; correspondence to clients re: further documentation and approval to make demand letter. |

Total Hours            4.6

CURRENT FEES                                                        $1,840.00

DISBURSEMENTS THROUGH 01/31/15

| 01/23/15 | Process Service | 79.50 |
| 01/23/15 | Process Service | 79.50 |

CURRENT DISBURSEMENTS                                              $159.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 4.6 | 400.00 | 1,840.00 |
| TOTAL ALL TIMEKEEPERS | 4.6 | | 1,840.00 |

TOTAL AMOUNT DUE THIS INVOICE                                      $1,999.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER ™
■■◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

March 25, 2015
INVOICE #: 520889-511321

FOR PROFESSIONAL SERVICES RENDERED THROUGH 02/28/15

MATTER NAME:              RS Medical

| 02/09/15 | Daniel A. Brown | 0.4 | Correspondence from Mr. Montero re: Nimbus supply agreement and review of same; review service of complaint status. |
| 02/11/15 | Daniel A. Brown | 1.1 | Review service materials; correspondence and telephone conference with opposing counsel re: need for answer; update client representative on status. |
| 02/13/15 | Daniel A. Brown | 0.2 | Correspondence to Mr. Montero re: status of service and default provisions as next step; correspondence from Mr. Calderbank, counsel for RS Medical. |
| 02/16/15 | Daniel A. Brown | 0.4 | Correspondence to Mr. Calderbank, defendant's counsel, re answer deadline and looming motion for default; correspondence to Mr. Montero re: answer deadline. |
| 02/25/15 | Daniel A. Brown | 0.1 | Correspondence from Mr. Calderbank re: providing an answer by mid-next week and requesting a teleconference to discuss case. |

Total Hours                2.2

CURRENT FEES                                                                          $880.00

DISBURSEMENTS THROUGH 02/28/15

| 02/19/15 | Filing Fee | 240.00 |
| | Long Distance and Other Toll Phone Charges | 0.60 |
| | Overnight delivery charges | 20.31 |

CURRENT DISBURSEMENTS                                                                 $260.91

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.



WILLIAMS KASTNER

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

PAGE 2

CLIENT NO.    29491
MATTER NO.    0101
INVOICE #:     520889-511321

Biomerics

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 2.2 | 400.00 | 880.00 |
| TOTAL ALL TIMEKEEPERS | 2.2 | | 880.00 |

TOTAL AMOUNT DUE THIS INVOICE                                    $1,140.91

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER ▮▮▮◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

April 29, 2015
INVOICE #: 522232-513232

FOR PROFESSIONAL SERVICES RENDERED THROUGH 03/31/15

MATTER NAME:          RS Medical

| 03/02/15 | Daniel A. Brown | 0.3 | Correspondence to and from Ms. Montero re: status update and expected answer date to complaint. |
| 03/06/15 | Daniel A. Brown | 0.3 | Correspondence to Mr. Calderbank, defense counsel, re: answer and need to respond or face default motion; correspondence from Mr. Calderbank re: promise of answer by Monday. |
| 03/11/15 | Daniel A. Brown | 0.2 | Correspondence and telephone conference with Mr. Calderbank re: new promise to answer by Friday, including counterclaims. |
| 03/13/15 | Daniel A. Brown | 0.7 | Review answer and counterclaims from RS Medical; correspondence to Messrs. Montero and Sessions re: answer and counterclaims and request for conference call. |
| 03/16/15 | Daniel A. Brown | 1.4 | Telephone conference with Mr. Sessions re: case and revise correspondence including Executed Punch agreement and release of exclusivity documents. |
| 03/25/15 | Kathleen X. Goodman | 1.8 | Review and analyze the Development and Supply Agreement, as well as the Complaint and Answer and Counterclaims in order to determine indemnity and indemnity process; begin to draft letter to Nimbus regarding indemnification. |
| 03/25/15 | Daniel A. Brown | 1.8 | Interoffice conferences (DBrown/KGoodman) re: review of underlying supply agreement and analysis of tender issue for indemnity under Delaware law; begin tender letter draft; correspondence to client re: status of tender letter and timing for delivery. |
| 03/26/15 | Kathleen X. Goodman | 2.7 | Continue to draft and finalize tender letter to Nimbus; draft letter to opposing counsel regarding CR 11 sanctions for breach of contract claim. |
| 03/26/15 | Daniel A. Brown | 1.9 | Revise correspondence to opposing counsel re: requesting dismissal of certain counterclaims in line with CR 11; review and revise final tender letter to Nimbus; correspondence to clients re: same. |
| 03/27/15 | Daniel A. Brown | 0.8 | Correspondence form Mr. Hogan re: tender letter; correspondence from defense counsel's office re: requesting stipulation to allow 3rd party complaint against Nimbus; correspondence from Mr. Sessions re: tender issue. |

Total Hours          11.9

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.



Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

PAGE 2

CLIENT NO.    29491
MATTER NO.    0101
INVOICE #:    522232-513232

Biomerics

CURRENT FEES                                                                                    $3,905.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 7.4 | 400.00 | 2,960.00 |
| Kathleen X. Goodman | 4.5 | 210.00 | 945.00 |
| TOTAL ALL TIMEKEEPERS | 11.9 | | 3,905.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                                   $3,905.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.   29491
MATTER NO.  0101

May 27, 2015
INVOICE #: 523274-514614

FOR PROFESSIONAL SERVICES RENDERED THROUGH 04/30/15

MATTER NAME:     RS Medical

| 04/01/15 | Daniel A. Brown | 0.1 | Correspondence to Messrs. Session and Montero re: status of tender communications with Nimbus. |
| 04/03/15 | Daniel A. Brown | 0.2 | Correspondence and telephone conference with opposing counsel re: plans on dismissing part of all of counterclaims; correspondence to Mr. Sessions re: same and status update. |
| 04/08/15 | Daniel A. Brown | 0.8 | Review correspondence to and from Nimbus and Biomerics re: tender of claim; interoffice conference (DBrown/KGoodman) re: indemnification memo and thoughts on coverage. |
| 04/22/15 | Daniel A. Brown | 1.9 | Correspondence to RS Medical's counsel re: dismissal of breach of contract counterclaim; correspondence to Mr. Sessions re: teleconference with Nimbus and status of counterclaim partial dismissal; review recording of conference call had earlier in month between Nimbus and Biomerics. |
| 04/24/15 | Daniel A. Brown | 0.1 | Telephone conference with opposing counsel re dismissal. |
| 04/28/15 | Kathleen X. Goodman | 0.3 | Interoffice conference (KGoodman/DBrown) re: Letter of Understanding and what duties are owed and rights exist under the same. |
| 04/28/15 | Daniel A. Brown | 1.4 | Correspondence to client re: recent call with Nimbus on claims and indemnification; strategize re: answers to client's questions; correspondence to opposing counsel re: status of dismissal of breach of contract claim. |
| 04/30/15 | Kathleen X. Goodman | 1.4 | Review and analyze Supply and Development Agreement in order to determine whether Nimbus has an ongoing duty to pay for products manufactured and shipped by Biomerics to third parties. |

Total Hours        6.2

CURRENT FEES                              $2,157.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice
Interest of 1.5% per month on past due invoices
Please indicate our invoice number on your check when making payment

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

PAGE 2

CLIENT NO.   29491
MATTER NO.   0101
INVOICE #:    523274-514614

Biomerics

| · · · · · · · · · · TIMEKEEPER SUMMARY · · · · · · · · · · | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 4.5 | 400.00 | 1,800.00 |
| Kathleen X. Goodman | 1.7 | 210.00 | 357.00 |
| TOTAL ALL TIMEKEEPERS | 6.2 | | 2,157.00 |

TOTAL AMOUNT DUE THIS INVOICE                                          $2,157.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER™

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

---

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

June 26, 2015
INVOICE #: 524508-516688

FOR PROFESSIONAL SERVICES RENDERED THROUGH 05/31/15

MATTER NAME:          RS Medical

| Date | Attorney | Hours | Description |
|---|---|---|---|
| 05/04/15 | Kathleen X. Goodman | 1.1 | Interoffice conference (DBrown/KGoodman) re: next steps and upcoming client telephone call (.2); review and analyze invoices in order to determine whether there exists an attorney's fee provision (.6); prepare for and attend telephone call with client (.3). |
| 05/04/15 | Daniel A. Brown | 0.9 | Prepare for and telephone conference with Mr. Sessions re: status of case and resulting strategy; telephone conference with opposing counsel re: litigation proceedings. |
| 05/11/15 | Daniel A. Brown | 0.4 | Telephone conference and correspondence with opposing counsel confirming rejection of settlement offer. |
| 05/13/15 | Daniel A. Brown | 0.3 | Correspondence to and from Mr. Calderbank, opposing counsel, re: lack of response to settlement offer; correspondence to client representatives (Messrs. Montero and Sessions) re: same. |
| 05/20/15 | Daniel A. Brown | 0.1 | Correspondence from Mr. Sessions re: communications with Mr. Wright (Nimbus) re: outstanding invoices and other payment issues. |
| 05/21/15 | Daniel A. Brown | 0.1 | Correspondence from Mr. Sessions re: response from Mr. Wright re: payment issues and potential counterclaims by Nimbus if brought into the lawsuit. |
| 05/22/15 | Daniel A. Brown | 0.1 | Correspondence from Mr. Sessions re: reply back to Mr. Wright re: payment issues with Nimbus. |
| 05/26/15 | Daniel A. Brown | 1.1 | Correspondence to Mr. Sessions re: advice on whether to bring Nimbus into the action and seek indemnification and direct claims or not; interoffice conference (DBrown/KGoodman) re: interpretation of the letter agreement and underlying distribution/manufacturing agreement between Biomerics and Nimbus. |
| 05/27/15 | Daniel A. Brown | 0.2 | Correspondence from Messrs. Hogan and Sessions re: continued issues surrounding credit for Nimbus by Biomerics. |
| 05/29/15 | Daniel A. Brown | 0.4 | Correspondence and telephone conference with Mr. Calderbank re: continued discussions between clients and need for possible summary judgment hearing date and his availability re: same. |

Total Hours          4.7

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER™

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

PAGE 2

CLIENT NO.    29491
MATTER NO.    0101
INVOICE #:     524508-516688

Biomerics

CURRENT FEES                                                              $1,671.00


DISBURSEMENTS THROUGH 05/31/15

        On-Line Research                                              2.74

CURRENT DISBURSEMENTS                                                    $2.74


| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 3.6 | 400.00 | 1,440.00 |
| Kathleen X. Goodman | 1.1 | 210.00 | 231.00 |
| TOTAL ALL TIMEKEEPERS | 4.7 | | 1,671.00 |


TOTAL AMOUNT DUE THIS INVOICE                                        $1,673.74

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

# WILLIAMS KASTNER™ ▮▮▮◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

July 27, 2015
INVOICE #: 525919-518534

FOR PROFESSIONAL SERVICES RENDERED THROUGH 06/30/15

MATTER NAME:                RS Medical

| 06/01/15 | Daniel A. Brown | 0.3 | Correspondence to and from Mr. Sessions re: request for input on response to Nimbus and my editing of the same. |
| 06/03/15 | Daniel A. Brown | 0.2 | Correspondence from Mr. Sessions re: settlement negotiations with Nimbus directly. |
| 06/10/15 | Daniel A. Brown | 0.1 | Correspondence to Messrs. Sessions and Montero re: past due invoices and need for payment. |
| 06/18/15 | Daniel A. Brown | 0.1 | Correspondence to and from Messrs. Montero and Sessions re: past due invoices and promised payment. |
| Total Hours | | 0.7 | |

CURRENT FEES                                                                        $280.00

| * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.7 | 400.00 | 280.00 |
| TOTAL ALL TIMEKEEPERS | 0.7 | | 280.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                        $280.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER™

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

August 25, 2015
INVOICE #: 527302-521134

FOR PROFESSIONAL SERVICES RENDERED THROUGH 07/31/15

MATTER NAME:    RS Medical

| 07/27/15 | Daniel A. Brown | 0.2 | Review outstanding invoices, trust account and last payment from client; correspondence to client re: late payment. |
| 07/31/15 | Daniel A. Brown | 0.2 | Correspondence to client again re: payment need. |
| Total Hours | | 0.4 | |

CURRENT FEES                                                                                    $160.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.4 | 400.00 | 160.00 |
| TOTAL ALL TIMEKEEPERS | 0.4 | | 160.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                                   $160.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.


WILLIAMS KASTNER

Williams, Kastner
P.O. Box 21926
Seattle, Washington 9
Telephone (206) 628-6.

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

September 24, 2015
INVOICE #: 528403-522551

FOR PROFESSIONAL SERVICES RENDERED THROUGH 08/31/15

MATTER NAME:            RS Medical

| 08/10/15 | Daniel A. Brown | 1.5 | Correspondence from Mr. Sessions re: potential settlement options with Nimbus and RS Medical; correspondence from Mr. Montero re: draft settlement agreement with Nimbus and prior return of product information for RS Medical; review same. |
| 08/31/15 | Daniel A. Brown | 1.4 | Correspondence to client representatives re: status of settlement progress; review proposed settlement and edit same. |

Total Hours            2.9

CURRENT FEES                                          $1,160.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| --- | --- | --- | --- |
| Daniel A. Brown | 2.9 | 400.00 | 1,160.00 |
| TOTAL ALL TIMEKEEPERS | 2.9 | | 1,160.00 |

TOTAL AMOUNT DUE THIS INVOICE                        $1,160.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

 WILLIAMS KASTNER▪▪▪◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.   29491
MATTER NO.   0101

October 23, 2015
INVOICE #: 529369-524266

FOR PROFESSIONAL SERVICES RENDERED THROUGH 09/30/15

MATTER NAME:          RS Medical

| 09/01/15 | Daniel A. Brown | 1.7 | Review and revise proposed settlement agreement from client; correspondence to client re: revisions to same and re: authority to attempt settlement with RS Medical. |
| 09/08/15 | Daniel A. Brown | 0.2 | Correspondence to Mr. Montero re: confirmation of terms of settlement agreement and specific invoices and shipping information. |
| 09/10/15 | Daniel A. Brown | 0.5 | Correspondence and telephone conference with Mr. Calderbank re: settlement offer to RS Medical; correspondence to client re: making of settlement offer. |
| 09/11/15 | Daniel A. Brown | 0.2 | Correspondence from Mr. Calderbank re: settlement offer acknowledgement and questions re: same; telephone conference re: same. |
| 09/21/15 | Daniel A. Brown | 1.1 | Correspondence to and from Mr. Montero re: status of our settlement offer; correspondence to and from Mr. Calderbank re: settlement offer and issues re: same. |
| 09/22/15 | Daniel A. Brown | 0.3 | Correspondence from Mr. Calderbank re: counteroffer; correspondence to Messrs. Montero and Sessions re: same. |

Total Hours          4.0

CURRENT FEES                                                                $1,600.00

| * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 4.0 | 400.00 | 1,600.00 |
| TOTAL ALL TIMEKEEPERS | 4.0 | | 1,600.00 |

TOTAL AMOUNT DUE THIS INVOICE                                              $1,600.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.


**WILLIAMS KASTNER**
∎∎∎◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

November 17, 2015
INVOICE #: 530681-525943

FOR PROFESSIONAL SERVICES RENDERED THROUGH 10/31/15

MATTER NAME:          RS Medical

| 10/01/15 | Daniel A. Brown | 0.2 | Correspondence to Mr. Sessions re: lack of response to defendant's counteroffer and request for authority. |
| 10/02/15 | Daniel A. Brown | 0.2 | Correspondence to Mr. Sessions re: potential summary judgment motion and/or walk away agreement. |
| 10/05/15 | Daniel A. Brown | 0.2 | Correspondence from and to Mr. Sessions re: settlement options and whether client wants to simply dismiss with no further action. |
| 10/16/15 | Daniel A. Brown | 0.1 | Correspondence to Mr. Sessions re: waiting to hear on response to settlement decision from Biomerics. |
| 10/23/15 | Daniel A. Brown | 0.1 | Correspondence to Mr. Sessions again inquiring on settlement position. |
| 10/26/15 | Daniel A. Brown | 0.2 | Correspondence from and to Mr. Sessions re: settlement issues still existing. |
| Total Hours |  | 1.0 |  |

CURRENT FEES                                                                                         $400.00

| * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 1.0 | 400.00 | 400.00 |
| TOTAL ALL TIMEKEEPERS | 1.0 |  | 400.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                                $400.00

*11-27-15*
*b/400*
*4/1*

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

 WILLIAMS KASTNER

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

December 11, 2015
INVOICE #: 531580-527697

FOR PROFESSIONAL SERVICES RENDERED THROUGH 11/30/15

MATTER NAME:          RS Medical

| | | | |
|---|---|---|---|
| 11/23/15 | Daniel A. Brown | 0.3 | Review prior correspondence chain with Mr. Sessions and Mr. Montero; correspondence third time to Mr. Sessions re: settlement potential and plans for handling litigation. |
| Total Hours | | 0.3 | |

CURRENT FEES                                                                                        $120.00

| *********** TIMEKEEPER SUMMARY *********** | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.3 | 400.00 | 120.00 |
| TOTAL ALL TIMEKEEPERS | 0.3 | | 120.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                              $120.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

**WILLIAMS KASTNER™**
**▌▌▌◀**

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

January 29, 2016
INVOICE #: 533285-529476

FOR PROFESSIONAL SERVICES RENDERED THROUGH 12/31/15

MATTER NAME:              RS Medical

| 12/31/15 | Daniel A. Brown | 0.1 | Correspondence to client again re: path toward resolution or dismissal. |
|---|---|---|---|
| Total Hours | | 0.1 | |

CURRENT FEES                                                                    $40.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.1 | 400.00 | 40.00 |
| TOTAL ALL TIMEKEEPERS | 0.1 | | 40.00 |

TOTAL AMOUNT DUE THIS INVOICE                                        $40.00

**OUTSTANDING ACCOUNTS RECEIVABLE**

| Invoice # | Date | | Billed Amounts | | Paid Amounts * | | A/R Balances |
|---|---|---|---|---|---|---|---|
| 530681-525943 | 11/17/15 | Billed Fees: | 400.00 | Paid Fees: | 0.00 | Fees A/R Balance: | 400.00 |
| | | Billed Disb: | 0.00 | Paid Disb: | 0.00 | Disb A/R Balance: | 0.00 |
| | | Billed Int: | 0.00 | Paid Int: | 0.00 | Int. A/R Balance: | 0.00 |
| | | Billed Total: | 400.00 | Paid Total: | 0.00 | Total A/R Balance: | 400.00 |

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

# WILLIAMS KASTNER™ ▮▮▮◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

February 18, 2016
INVOICE #: 533816-530984

FOR PROFESSIONAL SERVICES RENDERED THROUGH 01/31/16

MATTER NAME:         RS Medical

| | | | |
|---|---|---|---|
| 01/29/16 | Daniel A. Brown | 0.2 | Correspondence to Messrs. Sessions and Montero re: lack of response and need to resolve or move forward. |

Total Hours          0.2

CURRENT FEES                                                                          $80.00

| *********** TIMEKEEPER SUMMARY *********** | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.2 | 400.00 | 80.00 |
| TOTAL ALL TIMEKEEPERS | 0.2 | | 80.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                        $80.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.

WILLIAMS █ ██◄

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.   0101

April 25, 2016
INVOICE #: 535874

FOR PROFESSIONAL SERVICES RENDERED THROUGH 03/31/16

MATTER NAME:          RS Medical

| 03/15/16 | Daniel A. Brown | 0.5 | Correspondence to Messrs. Montero and Sessions re: following up with RS Medical's prior "offer" to settle to see if its still available; correspondence and telephone conference with to Mr. Calderbank, counsel for RS Medical re same |
| 03/23/16 | Daniel A. Brown | 0.4 | Correspondence and telephone conference with Mr. Calderbank re: status of settlement offer availability; correspondence to clients re update on status |
| 03/25/16 | Daniel A. Brown | 0.3 | Correspondence and telephone conference with from Mr. Calderbank re: response to request and terms settlement would be acceptable to RS Medical |
| 03/30/16 | Daniel A. Brown | 0.5 | Correspondence and telephone conference with Mr. Calderbank re: settlement status; correspondence to and from Mr. Sessions re: prior recent offer where a 50% payment for settlement was made to settle |

Total Hours              1.7

CURRENT FEES                                                                    $680.00

| *********** TIMEKEEPER SUMMARY *********** | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 1.7 | 400.00 | 680.00 |
| TOTAL ALL TIMEKEEPERS | 1.7 | | 680.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                  $680.00



**TRUST CALCULATIONS**

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.


WILLIAMS KASTNER™

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

May 16, 2016
INVOICE #: 536680

FOR PROFESSIONAL SERVICES RENDERED THROUGH 04/30/16

MATTER NAME:        RS Medical

| 04/04/16 | Daniel A. Brown | 0.3 | Correspondence to client and opposing counsel re: status of potential settlement |
| 04/11/16 | Daniel A. Brown | 0.1 | Correspondence from RS Medical counsel re: alleged settlement |
| 04/14/16 | Daniel A. Brown | 1.0 | Review apparent settlement offer from RS Medical; correspondence from Mr. Sessions re: rejection of offer and counterproposal terms; correspondence and telephone conference with opposing counsel re: inquiry on beginnings of settlement terms |
| 04/18/16 | Daniel A. Brown | 0.7 | Correspondence to and from Mr. Sessions re: settlement background and terms of potential counteroffer; review correspondence from opposing counsel re: earlier settlement draft |
| 04/25/16 | Daniel A. Brown | 0.3 | Correspondence from Mr. Sessions re: forwarding emails from RS Medical representative; strategize on response |
| 04/26/16 | Daniel A. Brown | 0.4 | Correspondence to RS Medical's counsel re: settlement offer terms and coditions; correspondence to Mr. Sessions re same |

Total Hours            2.8

CURRENT FEES                                                                              $1,120.00

| ********** TIMEKEEPER SUMMARY ********** | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 2.8 | 400.00 | 1,120.00 |
| TOTAL ALL TIMEKEEPERS | 2.8 | | 1,120.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                            $1,120.00



This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest of 1.5% per month on past due invoices.
Please indicate our invoice number on your check when making payment.



WILLIAMS KASTNER

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

CLIENT NO.    29491
MATTER NO.    0101

June 21, 2016
INVOICE #: 537845

FOR PROFESSIONAL SERVICES RENDERED THROUGH 05/31/16

MATTER NAME:            RS Medical

| 05/04/16 | Daniel A. Brown | 0.2 | Correspondence and telephone call from Mr. Calderbank re: response to my latest communication |
| 05/05/16 | Daniel A. Brown | 0.3 | Correspondence from Mr. Calderbank re: rejecting settlement offer and counteroffer |
| 05/09/16 | Daniel A. Brown | 0.3 | Correspondence to Mr. Calderbank re: issues with letter; correspondence to Mr. Sessions re: rejection of offer and request for further instructions |

Total Hours            0.8

CURRENT FEES                                                                        $320.00

| * * * * * * * * * * * TIMEKEEPER SUMMARY * * * * * * * * * * * | | | |
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
|---|---|---|---|
| Daniel A. Brown | 0.8 | 400.00 | 320.00 |
| TOTAL ALL TIMEKEEPERS | 0.8 | | 320.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                    $320.00

## TRUST CALCULATIONS

CURRENT TRUST BALANCE                            $4,960.00

LESS TRUST APPLIED TO THIS MATTER                - $1,440.00

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest will accrue at the rate of 1.5% per month on unpaid invoices after 30 days.
Please indicate our invoice number on your check when making payment.

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics                                    CLIENT NO.   29491
Attn: Travis Sessions                        MATTER NO.   0101
President and CEO
2700 South 900 West                          July 25, 2016
Salt Lake City, UT 84119                     INVOICE #: 539227

FOR PROFESSIONAL SERVICES RENDERED THROUGH 06/30/16

MATTER NAME:            RS Medical

06/01/16   Daniel A. Brown      0.1    Correspondence from Mr. Calderbank inquiring as to status of potential
                                       response from Biomerics

Total Hours                     0.1

CURRENT FEES                                                                                    $40.00

| *********** TIMEKEEPER SUMMARY *********** | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS WORKED | BILLED PER HOUR | BILL AMOUNT |
| Daniel A. Brown | 0.1 | 400.00 | 40.00 |
| TOTAL ALL TIMEKEEPERS | 0.1 | | 40.00 |

TOTAL AMOUNT DUE THIS INVOICE                                                                   $40.00

## TRUST CALCULATIONS

CURRENT TRUST BALANCE                              $3,520.00

LESS TRUST APPLIED TO THIS INVOICE                  - $0.00

**REMAINING BALANCE IN TRUST**                    **$3,520.00**

**TOTAL BALANCE DUE THIS INVOICE**                                                             **$40.00**

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest will accrue at the rate of 1.5% per month on unpaid invoices after 30 days.
Please indicate our invoice number on your check when making payment.

WILLIAMS KASTNER™
▮▮▮◀

Williams, Kastner & Gibbs PLLC
P.O. Box 21926
Seattle, Washington 98111-3926
Telephone (206) 628-6600

TAX ID# 91-0208860

Biomerics
Attn: Travis Sessions
President and CEO
2700 South 900 West
Salt Lake City, UT 84119

**Final Bill**

CLIENT NO.    29491
MATTER NO.    0101

March 27, 2017
INVOICE #: 549857

MATTER NAME:                RS Medical

DISBURSEMENTS THROUGH 02/28/17

| | |
|---|---:|
| Special Postage | 6.56 |
| Overnight delivery charges | 14.77 |

CURRENT DISBURSEMENTS                                        $21.33

TOTAL AMOUNT DUE THIS INVOICE                               $21.33

This invoice does not include expense items for which we have not yet been billed.
Payment due upon receipt of invoice.
Interest will accrue at the rate of 1.5% per month on unpaid invoices after 30 days.
Please indicate our invoice number on your check when making payment.

# Exhibit 4

**SHORT TERM LICENSE TO SELL AGREEMENT**

THIS SHORT TERM LICENSE TO SELL AGREEMENT (this "Agreement") is made and entered into the 1st day of October 2016 (the "Effective Date"), by and between BIOMERICS, LLC, ("BIO") a Utah limited liability company with its principal place of business at 2700 South 900 West, Salt Lake City, UT 84062, and Nimbus Concepts LLC ("NIM"), a Delaware limited liability company.

WHEREAS, the parties have entered into a non-binding term sheet that contemplates the potential sale of Assets and/or Distributorship from NIM to BIO;

WHEREAS, NIM desires BIO to sell its current Nimbus RF Multi-tined Electrode ("Product") to third parties while Parties negotiate the terms and conditions of a definitive agreement;

WHEREAS, Parties desire to sell product into the marketplace to sustain customers and to retain the value of the Product during the negotiation period;

NOW, THEREFORE, the Parties hereby agree as follows:

1.   Short Term License to Sell.  NIM hereby grants to BIO an exclusive 90 day short-term license to sell Product to any and all third parties under the following conditions.
     a.  BIO is authorized to sell the product directly under the pricing and payment terms it chooses.
     b.  BIO will pay to NIM a $10 license fee on each Product sold during the exclusive period.
     c.  BIO is authorized to apply the $10 license fee against its outstanding balance during the exclusive period.
     d.  These terms apply to any Product sold from the effective date to the termination date.
2.   Term and Termination.
     a.  This agreement is effective the 1st day of October 2016.
     b.  This agreement expires on January 1, 2017; or on the date Parties enter into a definitive agreement, whichever comes first.

Agreed and Accepted,

Nimbus Concepts LLC

By: _____

Name:  Mike Hogan, Member

BIOMERICS

By: _____

Name:  Travis Sessions

Title: Member

# Exhibit 5

Nimbus Concepts, LLC
℅ Jed Hansen, Esq.

#1

April 6, 2017
Invoice No. 232733

CLIENT:   21348         Nimbus Concepts, LLC
MATTER: 0001            General Business

## PLEASE SEND THIS PAGE WITH YOUR PAYMENT

| | | | |
|---|---|---|---|
| Total This Invoice | | $ | 17,464.50 |
| Trust Funds Applied | | | -7,500.00 |
|     Trust Funds Remaining: | $0.00 | | |
| **Balance Owing This Invoice** | | $ | **9,964.50** |
| **Grand Total Owing All Invoices** | | $ | **9,964.50** |

**PAYMENT AMOUNT**   9,964.50

# Thank You

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account
balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.



# RICHARDS BRANDT MILLER NELSON

*A Professional Law Corporation*

*Post Office Box 2465 | Salt Lake City, Utah 84110-2465 | (801) 531-2000    Fax (801) 532-5506 | Employer Identification No. 87-0374679*
*For Accounting Inquiries (801) 531-4804*

Nimbus Concepts, LLC
% Jed Hansen, Esq.

April 6, 2017
Client # 21348-0001
Invoice # 232733

---

**MATTER - ID:**   **General Business**

| Date | Atty | SERVICES | Hours |
|------|------|----------|-------|
| 03/07/17 | BGS | Review client-provided operating agreement, subscription agreement and notes from prior conversations with Dr. Wright. Prepare list of questions, open items, ambiguous terms, and similar topics in preparation for office meeting. | 2.00 |
| 03/07/17 | BGS | Meeting with client and AMW regarding client's needs and issues. Discuss strategy, review Company history, review identity of each member and his or her percentage of ownership interests. Arrive at strategy to represent the Company's best interests in completing a sale of the members' interests and the Company's assets, as well as winding up and dissolution. | 2.00 |
| 03/07/17 | CMH | Office conference re background of transaction; review operating agreement; notes re same | 3.60 |
| 03/07/17 | AMW | Draft Conflict Waiver; confer with BGS & RCF; revisions to same. | 2.10 |
| 03/07/17 | AMW | Draft updated representation payment arrangement correspondence. | 1.10 |
| 03/07/17 | CMH | Review email correspondence from Biometrics regarding transaction; review Letter of Understanding and Nimbus Concepts comments; review Nimbus Concepts operating agreement; analyze ability of Nimbus to approve proposed transaction; analyze proper method of distributing proceeds of asset sale to Nimbus members; review Delaware LLC law regarding how distributions to members are to be made; discussion regarding composition of current Nimbus board of directors; telephone meeting regarding threshold issues | 4.70 |
| 03/07/17 | CMH | Telephone conference with Travis Sessions of Biometrics and counsel to discuss outstanding issues; notes re discussion; review company minutes and resolutions | 2.30 |
| 03/07/17 | RCF | Evaluate issues of conflict, 3rd party payment of fees, and entity as client; and input to A. Westover and B. Scholl on waiver and billing arrangements. | 1.00 |

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account
balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

Page 2

Nimbus Concepts, LLC
% Jed Hansen, Esq.

April 6, 2017
Client # 21348-0001
Invoice # 232733

| Date | Atty | SERVICES | Hours |
|------|------|----------|-------|
| 03/08/17 | BGS | Respond substantively to email communications from Mark Kraft and Michael Hogan, explaining: (i) that RBMN has been retained to represent the Company and its members, not any individual member or members. (II) Discuss division of duties with APW regarding discussions with members; (iii) exchange communications with Dr. Wright regarding his provision of certain Nimbus documents discussed in 3/9/2017 office consultation. | 1.00 |
| 03/08/17 | CMH | Review email correspondence; review Delaware Limited Liability Company Act regarding voting rights of members and derivative actions; notes re same; review Second Amended and Restated Limited Liability Company Agreement re potential issues with proposed transaction; notes re same | 5.20 |
| 03/08/17 | AMW | Follow-up with Dr. Wright regarding initial records. | 0.50 |
| 03/09/17 | AMW | Review initial records provided by Dr. Wright. | 4.20 |
| 03/09/17 | AMW | Email to Dr. Wright regarding contact information for Nimbus members. | 0.10 |
| 03/10/17 | BGS | Teleconference with Biomerics' counsel Jed Hansen and CEO Travis Sessions to discuss Biomerics' proposal to purchase the assets of Nimbus Concepts, LLC. Discuss review of documents provided to date and request further documents for the purpose of fully understanding Nimbus' history and relationship with Biomerics, as well as any further terms of the proposed transaction. | 1.00 |
| 03/12/17 | BGS | Review additional documents provided by Biomerics' attorney Jed Hansen with the objective of providing context. Documents reviewed and contextualized include: (i) correspondence; (ii) license to sell agreement; (iii) Retainer Invoice from Knobbe Martens for IP work performed; (iv) Expression of Interest from MedVenture Holdings; and (v) Dr. Robert Wright's signed LOU, dated 2/18/2017. Read and review documents to put into context among other provided documents in order to understand: (i) relationship among the members; and (ii) recent history involving Nimbus, Biomerics and any other third parties. Email exchange with Robert Attai, legal counsel for member Tim Houden. | 1.00 |
| 03/13/17 | BGS | Review letter to members. Prepare initial letter and copies of engagement letter and addendum to send to members of entity and/or their counsel. Compose cover email explaining that (i) RBMN has been retained as corporate counsel; (ii) we would like to discuss this matter with each member to learn more about his/her thoughts as well as any concerns; and (iii) suggesting that each party indemnify every other party in order to resolve the matter and complete the transaction with Biomerics. | 1.00 |
| 03/13/17 | CMH | Due diligence review of email correspondence. | 3.10 |
| 03/13/17 | AMW | Conference with BGS and CXH re strategy going forward and correspondence to Nimbus members; emails re same. | 0.60 |
| 03/14/17 | CMH | Review email correspondence re Tim Houden member holdings; | 2.90 |

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

Page 3

Nimbus Concepts, LLC
% Jed Hansen, Esq.

April 6, 2017
Client # 21348-0001
Invoice # 232733

| Date | Atty | SERVICES | Hours |
|------|------|----------|-------|
| | | telephone conferences with Robert Attai, counsel to Tim Houden, regarding structure of asset purchase transaction; draft email correspondence to Mike Hogan regarding asset purchase transaction; review issues list; | |
| 03/14/17 | BGS | Review documents and discuss status of member conversations with CPH. Teleconference with Mark Kraft concerning the terms of the Agreement, his concerns and desires regarding outcome. | 1.00 |
| 03/14/17 | AMW | Review correspondence records provided by Dr. Wright. | 3.30 |
| 03/16/17 | CMH | Prepare for conference call with Michael Hogan; conference call with Michael Hogan; notes regarding Michael Hogan discussion; review potential IRS issues | 2.20 |
| 03/16/17 | BGS | Telephone conversation with Claudine Brandt regarding the Biomerics offer.  Discuss terms, timeline, and the nature of RBMN's representation of Nimbus, stressing that RBMN represents and not any individual member or members.  Send Ms. Brandt a copy of the LOU executed by Dr. Robert Wright to provide a written copy of the general terms of the offer.  Review discussion with APW. | 0.40 |
| 03/16/17 | AMW | Confer with BGS re document review. | 0.60 |
| 03/16/17 | AMW | Initial emails to Deborah Brandt, Scott Brandt, and Dr. Calodney. | 0.60 |
| 03/17/17 | CMH | Review proposed terms of asset purchase; review release terms; review forms for asset purchase agreement; research Delaware limited liability company act regarding sales of all assets | 3.10 |
| 03/20/17 | AMW | Follow-up with Deborah Brandt, Scott Brandt, and Dr. Calodney. | 0.50 |
| 03/22/17 | AMW | Phone calls with Deborah Brandt, Dr. Brandt, and Dr. Calodney; draft summaries re same; confer re same; emails re same. | 2.10 |
| 03/23/17 | CMH | Review indemnification and release issues between members and each of Nimbus and Biomerics | 1.30 |
| 03/24/17 | CMH | Draft asset purchase agreement; review letter of understanding regarding basic terms; review operation agreement of Nimbus regarding member issues; review indemnification and release provisions | 6.50 |
| 03/24/17 | CMH | Draft asset purchase agreement | 4.50 |
| 03/28/17 | CMH | Review/revise asset purchase agreement | 0.90 |
| 03/28/17 | CMH | Review/revise asset purchase agreement; review release and indemnification issues; draft member authorizing resolutions; draft board of directors authorizing resolutions | 4.90 |
| 03/28/17 | CMH | Review/revise asset purchase agreement | 1.30 |
| 03/31/17 | BGS | Assess client's needs and issues.  Review draft 1 of Nimbus-Biomerics Agreement.  Send draft to Biomerics' counsel, Jed Hansen, with cover email requesting input. | 1.20 |

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

Page 4

Nimbus Concepts, LLC
% Jed Hansen, Esq.

April 6, 2017
Client # 21348-0001
Invoice # 232733

## SUMMARY OF SERVICES

|  |  | Hours | Amount |
|---|---|---|---|
| Barry G. Scholl | BGS | 10.60 | 2,650.00 |
| Alexandria M. Westover | AMW | 15.70 | 2,904.50 |
| Russell C. Fericks | RCF | 1.00 | 285.00 |
| Clint M. Hanni | CMH | 46.50 | 11,625.00 |
| TOTAL HOURS: | | 73.80 | |
| TOTAL SERVICES RENDERED: | | | $  17,464.50 |

TOTAL THIS INVOICE                                          17,464.50

Trust Funds Applied                                          -7,500.00
    Trust Funds Remaining: $0.00

**Balance Owing This Invoice**                    $    **9,964.50**

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

# Exhibit 6

 

# RICHARDS BRANDT MILLER NELSON

*A Professional Law Corporation*

Post Office Box 2465 | Salt Lake City, Utah 84110-2465 | (801) 531-2000    Fax (801) 532-5506 | Employer Identification No. 87-0374679
For Accounting Inquiries (801) 531-4804

Nimbus Concepts, LLC
% Jed Hansen, Esq.

July 11, 2017
Client # 21348-0001
Invoice # 234923

**MATTER - ID:**    **General Business**

| Date | Atty | SERVICES | Hours |
|------|------|----------|-------|
| 06/01/17 | BGS | Tel conv with Biomerics' counsel Jed Hansen, re: alternate proposal from Dr. Robert Wright in which he and Tim Houden retain their membership interests in Nimbus and the other members sell their interests to Biomerics.  Discuss proposal with CMH and agree that he will present the proposal to Dr. Mark Kraft. | 0.60 |
| 06/01/17 | CMH | Office conferences regarding proposed new transaction structure; draft email correspondence regarding proposed new transaction structure | 0.80 |
| 06/02/17 | CMH | Telephone conferences re status of transaction; draft email to Nimbus board of managers; draft email to all members of Nimbus re status of transaction; review bankruptcy filings | 2.50 |
| 06/02/17 | BGS | Teleconference with Matt Roth, counsel for Dr. Robert Wright, Jed Hansen, counsel for Biomerics, and CMH, re two possible approaches to resolving the remaining issues in the transaction between Biomerics and Nimbus.  Consider client's needs and issues.  Agree, per Mr. Roth's suggestion, to send an update to the managers, members, and respective counsel for Nimbus members, setting forth the two options for Biomerics' purchase of the membership interests. | 0.50 |
| 06/05/17 | CMH | Review email correspondence from board of managers regarding status of transaction; telephone conferences regarding same; respond to same | 0.50 |
| 06/07/17 | CMH | Telephone conferences re status of transaction; email correspondence re same | 1.10 |
| 06/08/17 | CMH | Review email correspondence from Tim Houden counsel; telephone conference regarding same; review operating agreement re fiduciary duties; office conferences regarding same; draft email correspondence regarding legal advice to board of directors of Nimbus [$175.00 courtesy discount] | 2.70 |
| 06/09/17 | CMH | Review correspondence from Robert Wright counsel re calling of a meeting of Nimbus members for vote on transaction; email correspondence re same | 0.50 |

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

Page 2

Nimbus Concepts, LLC
% Jed Hansen, Esq.

July 11, 2017
Client # 21348-0001
Invoice # 234923

| Date | Atty | SERVICES | Hours |
|------|------|----------|-------|
| 06/12/17 | CMH | Review demand for meeting by Rob Wright; review Nimbus operating agreement re same; telephone conference re same; notes re same [$125.00 courtesy discount] | 1.70 |
| 06/16/17 | AMW | Review Nimbus documents for agreement giving Biomerics a security interest in the product; confer with B. Scholl re same. | 0.50 |
| 06/28/17 | CMH | Review email correspondence regarding status of transaction | 0.70 |

### SUMMARY OF SERVICES

|  |  | Hours | Amount |
|--|--|-------|--------|
| Barry G. Scholl | BGS | 1.10 | 275.00 |
| Alexandria M. Westover | AMW | 0.50 | 92.50 |
| Clint M. Hanni | CMH | 10.50 | 2,625.00 |
| TOTAL HOURS: | | 12.10 | |
| TOTAL SERVICES RENDERED: | | $ | 2,992.50 |

COURTESY DISCOUNT                                                    -300.00

**Balance Owing This Invoice**                              $    **2,692.50**

| **Prior Open Balances** | | | Adjustments | |
|-------------------------|------|--------|--------------|-------------|
| Invoice | Date | Amount | and Payments | Balance Due |
| 233681 | 05/11/17 | 10,617.00 | 0.00 | 10,617.00 |
| 234396 | 06/14/17 | 9,036.00 | 0.00 | 9,036.00 |
| | TOTAL PAST DUE | | | 19,653.00 |

### GRAND TOTAL OWING ALL INVOICES                $    **22,345.50**

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account
balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

Continued . . .

Nimbus Concepts, LLC
% Jed Hansen, Esq.

July 11, 2017
Invoice No. 234923

**CLIENT:   21348**     **Nimbus Concepts, LLC**
**MATTER: 0001**     **General Business**

## PLEASE SEND THIS PAGE WITH YOUR PAYMENT

| | | |
|---|---|---|
| Total This Invoice | $ | 2,992.50 |
| COURTESY DISCOUNT | $ | -300.00 |
| **Balance Owing This Invoice** | $ | **2,692.50** |
| Prior Open Balances | $ | 19,653.00 |
| **Grand Total Owing All Invoices** | $ | **22,345.50** |

## PAYMENT AMOUNT _____

# Thank You

A FINANCE CHARGE of 1.5% per month (ANNUAL PERCENTAGE RATE of 18%) will be made on any account balance remaining unpaid for a period of 30 days from the date of the statement on which the charges first occur.

# Exhibit 7

 

# Invoice R736208

Nimbus Concepts, LLC
Attn: Layla Jaramillo
1036 Liberty Park Drive #21
Austin, TX 78746
USA

This Invoice has been issued either in line with your contract terms, or in response to renewal instructions, for the following 6 Patent cases.

The costs on this Invoice may differ from the estimated costs in the Renewal Notice due to fluctuations in exchange rates, official fee increases and any applicable late fines.

You should note that interest will be charged on any amounts overdue at the rate of 1% per month or part thereof.

Total amount due
## US$ 5,226.97

You must allow time for your payment to clear by 24 June 2016.

25 April 2016

Nimbus Concepts, LLC

CPA Global account number: 2230571

Account currency: US Dollar

### We are here to help

North America Client Service Centre

Email: patentrenewals@cpaglobal.com

Phone: Toll free 866 739-2239

Fax: 703 739-2815

Operated by
CPA Global
2318 Mill Road, 12th Floor
Alexandria, VA 22314

Note: Please do not make cheques payable to CPA Global North America LLC.

Please let us know if you would like to:
– learn about CPA Direct, our online patents and designs portfolio management tool
– receive the information in this document as a data file in the future
– have your cases listed in a different order in the future
– change your contact details

## How to pay this Invoice

Please pay using one of the methods below and provide details of any credit being used.

### Bank transfer

HSBC Bank Plc
8 Canada Square
London
E14 5HQ

SORT code        40-05-15
Account Number   69417697
Account Name     CPA Global Limited
SWIFT Code       MIDLGB22XXX
IBAN Number      GB24MIDL40051569417697

The transaction reference should include your CPA Global account and invoice number.

### Cheque

Cheques must be made payable to **CPA Global Limited.** Please reference your CPA Global Account number or Invoice number on the cheque. For convenience, please send cheques to our North American affiliate at the following address for onward provision to CPA Global Limited.

CPA Global
2318 Mill Road, 12th Floor
Alexandria, VA 22314

Cheques may also be sent directly to CPA Global Limited to the address shown at the foot of this invoice.

### Service location

Please note that CPA Global Limited's renewals service is performed outside of the US. Form W8-BEN is available upon request.

CPA Global Limited
Liberation House, Castle Street,
St Helier, Jersey JE1 1BL Channel Islands
www.cpaglobal.com

FS 545772
ISO 9001-2008

ANAB

CPA Global Limited
Registered as a company under the Companies (Jersey) Law 1991, number 93743
Registered Office Liberation House, Castle Street, St Helier, Jersey, JE1 1BL Channel Islands
CPA Global Limited previously registered as Computer Patent Annuities Limited

Page
1 of 3



# Invoice R736208 continued

Total amount due
## US$ 5,226.97

**Canada**  Patent application number **2799505**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0001 | Large Entity | 2799505 | — | | US$ 883.92 |
| *Reference* | | *Knobbe Martens Olson & Bear case code* | | *File number* | |
| — | | 1199941 | | NBUS.004CA | |

*Division details*
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 215.41 | US$ 323.11 | US$ 345.40 |

**Europe**  Patent application number **11783944.9**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0002 | Patent | 11783944.9 | NBUS | | US$ 1,922.41 |
| *Reference* | | *Knobbe Martens Olson & Bear case code* | | *File number* | |
| — | | 1205525 | | NBUS.004EP | |

*Division details*
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 1,636.68 | US$ 85.73 | US$ 200.00 |

**Australia**  Patent number **2011256709**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0003 | Patent | 2011256709 | NBUS | | US$ 648.87 |
| *Reference* | | *Knobbe Martens Olson & Bear case code* | | *File number* | |
| — | | 1212035 | | NBUS.004AU | |

*Division details*
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 319.67 | US$ 129.20 | US$ 200.00 |

**Australia**  Patent application number **2014200126**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0004 | Patent | 2014200126 | NBUS | | US$ 648.87 |
| *Reference* | | *Knobbe Martens Olson & Bear case code* | | *File number* | |
| — | | 1221209 | | NBUS.004AUD1 | |

*Division details*
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 319.67 | US$ 129.20 | US$ 200.00 |

**Brazil**  Patent application number **112012029263-3**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0005 | Patent | 112012029263-3 | — | | US$ 506.13 |
| *Reference* | | *Knobbe Martens Olson & Bear case code* | | *File number* | |
| — | | 1202973 | | NBUS.004BR | |

*Division details*
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 116.88 | US$ 189.25 | US$ 200.00 |



| Date | CPA Global account number | Client name |
|---|---|---|
| 25 April 2016 | 2230571 | Nimbus Concepts, LLC |

## Invoice R736208 continued

**China**  Patent number **201180035655.7**  Renewal date **04 May 2016**  Annuity **06**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0006 | Patent | 201180035655.7 | NBUS | | US$ 616.77 |

| Reference | Kilpatric Mariano Olson & Bear case code | | File number | |
|---|---|---|---|---|
| — | 1199668 | | NBUS.004CN | |

| Division details | | | |
|---|---|---|---|
| NBUS – Nimbus Concepts, LLC | | | |

| Official Fee | Country Charge | Administration Charge | |
|---|---|---|---|
| US$ 255.52 | US$ 161.25 | US$ 200.00 | |

CPA Global Limited
Liberation House, Castle Street,
St Helier, Jersey JE1 1BL Channel Islands
www.cpaglobal.com

FS 545772
ISO 9001:2008

CPA Global Limited
Registered as a company under the Companies (Jersey) Law 1991, number 93743
Registered Office Liberation House, Castle Street, St Helier, Jersey, JE1 1BL Channel Islands
CPA Global Limited previously registered as Computer Patent Annuities Limited

This page is intentionally left blank



**CPA GLOBAL**®  # 3

# Invoice R835633

Nimbus Concepts LLC
Attn: Mark Kraft
925 Lincoln Street PH
Denver CO 80203
USA

This Invoice has been issued either in line with your contract terms, or in response to renewal instructions, for the following 13 Patent cases.

The costs on this Invoice may differ from the estimated costs in the Renewal Notice due to fluctuations in exchange rates, official fee increases and any applicable late fines.

You should note that interest will be charged on any amounts overdue at the rate of 1% per month or part thereof.

Total amount due
## US$ 16,398.68
You must allow time for your payment to clear by 02 July 2017.

---

## How to pay this Invoice
Please pay using one of the methods below and provide details of any credit being used.

Bank transfer
HSBC Bank Plc
8 Canada Square
London
E14 5HQ

| | |
|---|---|
| SORT code | 40-05-15 |
| Account Number | 69417697 |
| Account Name | CPA Global Limited |
| SWIFT Code | MIDLGB22XXX |
| IBAN Number | GB24MIDL40051569417697 |

The transaction reference should include your CPA Global account and invoice number.

Cheque
Cheques must be made payable to **CPA Global Limited.** Please reference your CPA Global Account number or Invoice number on the cheque. For convenience, please send cheques to our North American affiliate at the following address for onward provision to CPA Global Limited.

CPA Global
2318 Mill Road, 12th Floor
Alexandria, VA 22314

Cheques may also be sent directly to CPA Global Limited to the address shown at the foot of this invoice.

03 May 2017

Nimbus Concepts LLC

CPA Global account number: 2230571

Account currency: US Dollar

We are here to help
North America Client Service Centre

Email: patentrenewals@cpaglobal.com

Phone: Toll free 866 739-2239

Fax: 703 739-2815

Operated by
CPA Global
2318 Mill Road, 12th Floor
Alexandria, VA 22314

Note: Please do not make cheques payable to CPA Global North America LLC.

Please let us know if you would like to:
– learn about CPA Direct, our online patents and designs portfolio management tool
– receive the information in this document as a data file in the future
– have your cases listed in a different order in the future
– change your contact details

Service location
Please note that CPA Global Limited's renewals service is performed outside of the US. Form W8-BEN is available upon request.

CPA Global Limited
Liberation House, Castle Street,
St Helier, Jersey JE1 1BL Channel Islands
www.cpaglobal.com

FS 545772
ISO 9001:2008

ANAB

CPA Global Limited
Registered as a company under the Companies (Jersey) Law 1991, number 93743.
Registered Office Liberation House, Castle Street, St Helier, Jersey, JE1 1BL Channel Islands
CPA Global Limited previously registered as Computer Patent Annuities Limited

Page
1 of 4

# CPA GLOBAL

| Date | CPA Global account number | Client name |
|---|---|---|
| 03 May 2017 | 2230571 | Nimbus Concepts LLC |

## Invoice R835633 continued

Total amount due
## US$ 16,398.68

**Israel**   Patent application number **222965**   Renewal date **04 May 2017**   Annuity 07

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0001 | Patent | 222965 | NBUS | US$ 1,463.81 |

| Reference | | Knobbe Martens Olson & Bear case code | | File number |
|---|---|---|---|---|
| — | | 1205446 | | NBUS.004IL |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 606.23 | US$ 535.08 | US$ 322.50 |

**Canada**   Patent application number **2799505**   Renewal date **04 May 2017**   Annuity 07

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0002 | Large Entity | 2799505 | NBUS | US$ 839.25 |

| Reference | | Knobbe Martens Olson & Bear case code | | File number |
|---|---|---|---|---|
| — | | 1199941 | | NBUS.004CA |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 201.34 | US$ 302.01 | US$ 335.90 |

**Europe**   Patent application number **11783944.9**   Renewal date **04 May 2017**   Annuity 07

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0003 | Patent | 11783944.9 | NBUS | US$ 2,021.37 |

| Reference | | Knobbe Martens Olson & Bear case code | | File number |
|---|---|---|---|---|
| — | | 1205525 | | NBUS.004EP |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 1,739.26 | US$ 82.11 | US$ 200.00 |

**Australia**   Patent number **2011256709**   Renewal date **04 May 2017**   Annuity 07

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0004 | Patent | 2011256709 | NBUS | US$ 777.75 |

| Reference | | Knobbe Martens Olson & Bear case code | | File number |
|---|---|---|---|---|
| — | | 1212035 | | NBUS.004AU |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 308.83 | US$ 124.81 | US$ 344.11 |

# CPA GLOBAL

| Date | CPA Global account number | Client name |
|------|---------------------------|-------------|
| 03 May 2017 | 2230571 | Nimbus Concepts LLC |

## Invoice R835633 continued

**Australia**   Patent application number 2014200126   Renewal date **04 May 2017**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0005 | Patent | 2014200126 | NBUS | | US$ 777.75 |
| Reference | | Knobbe Martens Olson & Bear case code | | File number | |
| — | | 1221209 | | NBUS.004AUD1 | |
| Division details | | | | | |
| NBUS – Nimbus Concepts, LLC | | | | | |
| Official Fee | Country Charge | Administration Charge | | | |
| US$ 308.83 | US$ 124.81 | US$ 344.11 | | | |

**Australia**   Patent application number 2014200132   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0006 | Patent | 2014200132 | — | | US$ 240.00 |
| Reference | | Knobbe Martens Olson & Bear case code | | File number | |
| — | | 1221208 | | NBUS.001AUD1 | |
| Division details | | | | | |
| NBUS – Nimbus Concepts, LLC | | | | | |
| Official Fee | Country Charge | Administration Charge | | | |
| US$ 0.00 | US$ 0.00 | US$ 240.00 | | | |
| Notes | | | | | |
| Rejected fee charge | | | | | |

**Australia**   Patent application number 2015261694   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0007 | Patent | 2015261694 | NBUS | | US$ 1,733.05 |
| Reference | | Knobbe Martens Olson & Bear case code | | File number | |
| — | | 1250583 | | NBUS.001AUD2 | |
| Division details | | | | | |
| NBUS – Nimbus Concepts, LLC | | | | | |
| Official Fee | Country Charge | Administration Charge | | | |
| US$ 926.48 | US$ 124.81 | US$ 681.76 | | | |

**Brazil**   Patent application number 112012029263-3   Renewal date **04 May 2017**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0008 | Patent | 112012029263-3 | NBUS | | US$ 519.43 |
| Reference | | Knobbe Martens Olson & Bear case code | | File number | |
| — | | 1202973 | | NBUS.004BR | |
| Division details | | | | | |
| NBUS – Nimbus Concepts, LLC | | | | | |
| Official Fee | Country Charge | Administration Charge | | | |
| US$ 130.18 | US$ 189.25 | US$ 200.00 | | | |

**China**   Patent number 201180035655.7   Renewal date **04 May 2017**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | | Cost |
|---|---|---|---|---|---|
| 0009 | Patent | 201180035655.7 | NBUS | | US$ 757.91 |
| Reference | | Knobbe Martens Olson & Bear case code | | File number | |
| — | | 1199668 | | NBUS.004CN | |
| Division details | | | | | |
| NBUS – Nimbus Concepts, LLC | | | | | |
| Official Fee | Country Charge | Administration Charge | | | |
| US$ 396.66 | US$ 161.25 | US$ 200.00 | | | |

CPA Global Limited
Liberation House, Castle Street
St Helier, Jersey JE1 1BL Channel Islands
www.cpaglobal.com

FS 545772 ISO 9001 2008   ANAB

CPA Global Limited
Registered as a company under the Companies (Jersey) Law 1991, number 93743
Registered Office Liberation House, Castle Street, St Helier, Jersey, JE1 1BL Channel Islands
CPA Global Limited previously registered as Computer Patent Annuities Limited

Page 3 of 4

# CPA GLOBAL®

| Date | CPA Global account number | Client name |
|---|---|---|
| 03 May 2017 | 2230571 | Nimbus Concepts LLC |

## Invoice R835633 continued

**Canada**   Patent application number **2778997**   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0010 | Large Entity | 2778997 | NBUS | US$ 1,411.05 |

| Reference | Knobbe Martens Olson & Bear case code | File number |
|---|---|---|
| METHODS & SYSTEMS FOR SPINAL RADIO | 1205522 | NBUS.001CA |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 402.68 | US$ 302.01 | US$ 706.36 |

**Europe**   Patent application number **10829203.8**   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0011 | Patent | 10829203.8 | NBUS | US$ 3,282.15 |

| Reference | Knobbe Martens Olson & Bear case code | File number |
|---|---|---|
| METHODS & SYSTEMS FOR SPINAL RADIO | 1205149 | NBUS.001EP |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 2,608.89 | US$ 82.11 | US$ 591.15 |

**Australia**   Patent number **2010314930**   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0012 | Patent | 2010314930 | NBUS | US$ 1,733.05 |

| Reference | Knobbe Martens Olson & Bear case code | File number |
|---|---|---|
| METHODS & SYSTEMS FOR SPINAL RADIO | 1204945 | NBUS.001AU |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 926.48 | US$ 124.81 | US$ 681.76 |

**Brazil**   Patent application number **112012010199-4**   Renewal date **05 Nov 2016**   Annuity **07**

| Invoice item number | Type | Application number | Proprietor | Cost |
|---|---|---|---|---|
| 0013 | Patent | 112012010199-4 | NBUS | US$ 842.11 |

| Reference | Knobbe Martens Olson & Bear case code | File number |
|---|---|---|
| METHODS & SYSTEMS FOR SPINAL RADIO | 1205148 | NBUS.001BR |

Division details
NBUS – Nimbus Concepts, LLC

| Official Fee | Country Charge | Administration Charge |
|---|---|---|
| US$ 260.36 | US$ 189.25 | US$ 392.50 |

# Exhibit 8

# FB RICE

IP ◇ The IP Navigators

**TAX INVOICE 5250537**
Please quote the above number when making payment or if you have any queries

27 September 2017

**Please note our new bank account details as shown below**

Your Ref:
Our Ref:          525633
Client Number:    773454

Biomerics
Attention: Mr David Higgs
2700 South 900 West, Suite D
Salt Lake City UT 84119
United States of America

| Delivery Instructions: |
| Email - David Higgs (dhiggs@biomerics.com) |

Nimbus Concepts, LLC
Australian Patent Application 2017203519 (Divisional of AU 2014200126)
Entitled: Systems and methods for tissue ablation

|  | Amount |
|---|---|
| **Professional Fees** |  |
| Preparing and filing the above application, attending to payment of official fees and subsequently reporting filing particulars to you; policing deadlines and sending reminders to you; preparing specification for divisional application; checking details at filing; filing application and reporting to you. | $1297.00 |
|  |  |
| **Disbursements and Other Costs** |  |
| Official Filing Fee: | $289.00 |
| Document production and communication charges: | $30.00 |
|  |  |
| **Total Due (in United States Dollars):** | **$1,616.00** |

Author=MXL;Raised By=TXM;Signatory=SSB

Bank Details:
Bank:            National Australia Bank
Branch:          500 Bourke Street, Melbourne, Victoria 3000, Australia
Account Name:    FB Rice Pty Ltd
Account Number:  FBRPLUSD01

Swift:           NATAAU3302S

GPO Box 1794
Melbourne
VIC 3001
Australia

Tel +61 3 8618 4100
Fax +61 3 8618 4199
AR@fbrice.com.au
FB Rice Pty Ltd  ABN 70 618 431 851

# FB RICE  #6


The IP
Navigators

## TAX INVOICE 5242037
Please quote the above number when making payment or if you have any queries

31 May 2017

Your Ref:
Our Ref:          525633
Client Number:    773454

Biomerics
2700 South 900 West, Suite D
Salt Lake City UT 84119
United States of America

Delivery Instructions:
Email -   (instructions@knobbe.com)
Email Copy -  Accounts Payable (invoices@knobbe.com )

Nimbus Concepts, LLC
Australian Patent Application 2017203519 (Divisional of AU 2014200126)
Entitled: Systems and methods for tissue ablation

|                                                                                                                                                                                                                                                                                                                                  | Amount   |
| --- | --- |
| **Professional Fees** |  |
| Preparing and filing the above application, attending to payment of official fees and subsequently reporting filing particulars to you; policing deadlines and sending reminders to you; preparing specification for divisional application; checking details at filing; filing application and reporting to you. | $1297.00 |
| **Disbursements and Other Costs** |  |
| Official Filing Fee: | $289.00 |
| Document production and communication charges: | $30.00 |
| **Total Due (in United States Dollars):** | **$1,616.00** |

Author=MXL;Raised By=DMW;Signatory=SSB

Bank Details:
Bank:              ANZ
Branch:            Corner York & Market Street, Sydney, NSW, Australia
Account Name:      FB Rice
Account Number:    495994USD00001      ANZ BAU 3M

GPO Box 1794
Melbourne
VIC 3001

Tel +61 3 8618 4100
Fax +61 3 8618 4199
AR@fbrice.com.au

# Exhibit 9



**Intellectual Property Attorneys**



Reinhold Cohn & Partners
26A Habarzel St., Tel-Aviv 6971037, Israel
P.O.B. 13239, Tel-Aviv 6113102, Israel
Tel. +972 3 7109333 Fax. +972 3 5606405
info@rcip.co.il, www.rcip.co.il

Over 80 Years of IP Excellence

May 11, 2017

Account # 1552832
DEBIT NOTE No. 17-0015627

Biomerics
2700 S. 900 W.
Salt Lake City, UT 84119
United States of America

Attention: Mr. Daniel C. Higgs

Re:  Israeli Patent No. 222965
     National Phase of PCT/US11/035253
     "SYSTEMS FOR TISSUE ABLATION"
     in the name of NIMBUS CONCEPTS, LLC
     Our Ref: 2191702

     Renewal dates: 30/3/2017 and 04/05/2017

| Description (all services performed outside of the U.S.A.) | VAT exempt US$ | VAT payable US$ |
|---|---|---|
| To Our service fee for attending to the registration of this application, checking the patent certificate, payment of the renewal fees for years 1-10 and forwarding the patent and renewal certificates to you...... | | 875.00 |
| To Official Fees including three-month late renewal fees (NIS 3,015): ........................... | 843.97 | |
| Subtotal ........................................................ | 843.97 | 875.00 |
| To V.A.T. 17%................................................ | | 148.75 |

TOTAL:     **1,867.72**

REINHOLD COHN AND PARTNERS
By:
Sara BEN ZUR

Business Authorization (VAT) No. 557714037
Please pay either by cheque made out in our name or directly into our following bank account
     Bank Hapoalim B.M., Branch 781
     39 Montefiore Street
     Tel-Aviv 6520108, Israel
     Reinhold Cohn and Partners
     IBAN: IL 16-0127-8100-0000-0071-976
     Account Patach No. 142-71976 Swift code: Poalilita, or Poalilit



Over 80 Years of IP Excellence

Reinhold Cohn & Partners
26A Habarzel St., Tel-Aviv 6971037, Israel
P.O.B. 13239, Tel-Aviv 6113102, Israel
Tel. +972 3 7109333 Fax. +972 3 5606405
info@rcip.co.il, www.rcip.co.il

May 21, 2017

Biomerics                                    Sent by email and registered mail
2700 S. 900 W.
Salt Lake City, UT 84119
United States of America

**Attention: Mr. Daniel C. Higgs**

Dear Mr. Higgs,

> Re:   Israeli Patent No. 222965
>        National Phase of PCT/US11/035253
>        "SYSTEMS FOR TISSUE ABLATION"
>        In the name of:  NIMBUS CONCEPTS, LLC
>        Our Ref: 219170-2

## GRANT OF PATENT

We are pleased to advise you that the above referenced patent was granted on December 30, 2016. In accordance with your instructions, we have paid the accumulated renewal fees up to the end of the 10th year. Enclosed, for your safekeeping, are the official Patent and Renewal certificates.

The principal patent particulars are as follows:

| | |
|---|---|
| Application date: | May 4, 2011 |
| Publication date: | September 29, 2016 |
| Date of Grant: | December 30, 2016 |
| Priorities: | US - June 23, 2010 - 61/357,886 |
| | US - May 21, 2010 - 61/347,351 |
| | US - June 23, 2010 - 61/357,894 |
| Duration: | 20 years from the filing date until May 4, 2031 |
| **Next Renewal:** | **May 4, 2021 (Years 11 - 14)** |

Enclosed is our debit note in this matter.

Yours very truly,
**REINHOLD COHN AND PARTNERS**
By:

Ms. Sara Ben-Zur
Head of Renewals Department
renewals@rcip.co.il

CC: **Knobbe, Martens, Olson & Bear LLP** (via email only)

2191702\213-01

**State of Israel**
**Patent Office**



מדינת ישראל
רשות הפטנטים

חוק הפטנטים, התשכ"ז- 1967
Patents Law, 5727 - 1967

# ת ע ו ד ת   פ ט נ ט

# CERTIFICATE OF PATENT

This is to certify that the following particulars have been recorded in the Register of Patents:

זאת לתעודה כי הפרטים דלהלן
נרשמו בפנקס הפטנטים

| | | |
|---|---|---|
| Patent No: | 222965 | מס' הפטנט: |
| Date of Application: | 04/05/2011 | תאריך הבקשה: |

| | | |
|---|---|---|
| International Application No: | PCT/US/2011/035253 | בקשת פטנט בינלאומית מס': |
| International Publication No: | WO/2011/146243 | פרסום בינלאומי מס': |
| Title of Invention: | | שם האמצאה: |
| SYSTEMS FOR TISSUE ABLATION | | מערכות לכריתת רקמות |

**Priority Right:**                                                          **דין קדימה:**

| | | |
|---|---|---|
| US | 61/347351 | 21/05/2010 |
| US | 61/357886 | 23/06/2010 |
| US | 61/357894 | 23/06/2010 |

**Patentee(s):**                                                             **בעלי הפטנט:**

NIMBUS CONCEPTS, LLC
Customer No: 893898
1036 LIBERTY PARK DRIVE #21
AUSTIN, TX 78746
U.S.A.

| | | |
|---|---|---|
| Date of Publication: | 29/09/2016 | תאריך פרסום קיבול הבקשה: |
| Date of Grant: | 30/12/2016 | תאריך מתן פטנט: |

\* See reverse of certificate for patent  validity          \*תנאי תוקף  הפטנט ראה בגב התעודה





מדינת ישראל
משרד המשפטים

רשות הפטנטים

---

<div dir="rtl">

## תנאי הפטנט

מתן הפטנט וזכויות בעליו כפופים להוראות חוק הפטנטים, התשכ"ז-1967, והוראות כל דין אחר. הפטנט יהיה תקף לתקופה בת עשרים שנה מתאריך הבקשה לפטנט אם ישולמו אגרות החידוש בשיעורים ובמועדים הקבועים בתקנות ואם לא יבוטל הפטנט בדרך אחרת.

פטנט מוסף יהיה תקף כל עוד הפטנט העיקרי בתוקפו ואין חייבים לשלם בעדו אגרות חידוש. שינוי בבעלות בפטנט חייב ברישום בפנקס הפטנטים על מנת שיהיה לו תוקף כלפי צד שלישי. הפטנט יהיה בתוקף, וזאת מבלי לשלם אגרת חידוש כלשהי, עד לתום שלושה חודשים מתאריך מתן הפטנט. המועד לפירעונה של אגרת החידוש הראשונה יחול לפני תום שלושה חודשים מתאריך מתן הפטנט.

לאחר מכן, יחולו המועדים הבאים לפירעונן של אגרות החידוש:
לפני תום השנה השישית
לפני תום השנה העשירית
לפני תום השנה הארבע עשרה
לפני תום השנה השמונה עשרה

### - הכל לפי תאריך הבקשה לפטנט.
את פרטי האגרות ניתן לקבל מרשות הפטנטים לקראת כל מועד לפירעון.
**לפני תום שלושה חודשים מתאריך מתן הפטנט ניתן לשלם את אגרת החידוש למשך כל התקופה של עשרים שנה.**
**ניתן לשלם את האגרה באתר התשלומים הממשלתי באתר www.patents.gov.il או בשובר תשלומים של בנק**
**הדואר המצורף בזה.**

</div>

## CONDITIONS OF THE PATENT

The grant of the Patent and rights of the patentee are subject to the provisions of the Patents Law, 5727-1967 and the provisions of any other law.
The Patent shall remain in force for a period of twenty years from the date of the Patent application provided that the renewal fees are paid at the rates and times prescribed by the regulations and provided that the Patent does not become otherwise invalid.

A Patent of Addition shall remain in force as long as the main Patent is in force and no renewal fees are payable in respect thereof.
Any change in the ownership of a Patent must be recorded in the Register of Patents, in order to become effective with regard to a third party.
The Patent will remain in force without payment of any renewal fee for three months following the date of grant.
The first renewal fee will fall due for payment prior to expiration of three months from the date-of grant.

Thereafter, renewal fees will be payable as follows:
    Prior to the end of the sixth year
    Prior to the end of the tenth year
    Prior to the end of the fourteenth year
    Prior to the end of the eighteenth year

    - **Calculated, in every case, from the date of the Patent Application.**
Particulars of the fees may be obtained from the Patent Office prior to each renewal date.
Prior to the expiration of three months from the date, of grant, it is possible to pay the renewal fee for the whole of the twenty-year period.

---

<div dir="rtl">

רחוב אגודת ספורט הפועל מס' 1, הגן הטכנולוגי מלחה,
בניין מס' 5, ירושלים, מיקוד 9695101.
טל': 972-2-5651666 פקס: 972-2-5651641
www.patents.gov.il

</div>



State of Israel
Patent Office



מדינת ישראל
רשות הפטנטים

חוק הפטנטים, התשכ"ז- 1967
Patents Law, 5727 - 1967

Asa Kling  אסא קלינג
רשם הפטנטים
המדגמים וסימני המסחר
**Commissioner of Patent
Designs and Trademarks**



תעודה זו הינה אישור כי דבר מתן
הפטנט* נרשם בפנקס הפטנטים

This Certificate certifies that
the grant of the Patent* has
been recorded in the Register
of Patents.

* See reverse of certificate for patent validity     תנאי תוקף הפטנט ראה בגב התעודה*



רשות הפטנטים



מדינת ישראל
משרד המשפטים

תנאי הפטנט

מתן הפטנט וזכויות בעליו כפופים להוראות חוק הפטנטים, התשכ"ז-1967, והוראות כל דין אחר.
הפטנט יהיה תקף לתקופה בת עשרים שנה מתאריך הבקשה לפטנט אם ישולמו אגרות החידוש בשיעורים ובמועדים
הקבועים בתקנות ואם לא יבוטל הפטנט בדרך אחרת.

פטנט מוסף יהיה תקף כל עוד הפטנט העיקרי בתוקפו ואין חייבים לשלם בעדו אגרות חידוש.
שינוי בבעלות בפטנט חייב ברישום בפנקס הפטנטים על מנת שיהיה לו תוקף לפני צד שלישי.
הפטנט יהיה בתוקף, ואת מבלי לשלם אגרת חידוש כלשהי, עד לתום שלושה חודשים מתאריך מתן הפטנט.
המועד לפירעונה של אגרת החידוש הראשונה יחול לפני תום שלושה חודשים מתאריך מתן הפטנט.

לאחר מכן, יחולו המועדים הבאים לפירעונן של אגרות החידוש:
לפני תום השנה השישית
לפני תום השנה העשירית
לפני תום השנה הארבע עשרה
לפני תום השנה השמונה עשרה

- **הכל לפי תאריך הבקשה לפטנט.**
את פרטי האגרות ניתן לקבל מרשות הפטנטים לקראת כל מועד לפירעון.
לפני תום שלושה חודשים מתאריך מתן הפטנט ניתן לשלם את אגרת החידוש למשך כל התקופה של עשרים שנה.
**ניתן לשלם את האגרה באתר התשלומים הממשלתי באתר www.patents.gov.il או בשובר תשלומים של בנק
הדואר המצורף בזה.**

## CONDITIONS OF THE PATENT

The grant of the Patent and rights of the patentee are subject to the provisions of the Patents Law, 5727-1967 and the provisions of any other law.
The Patent shall remain in force for a period of twenty years from the date of the Patent application provided that the renewal fees are paid at the rates and times prescribed by the regulations and provided that the Patent does not become otherwise invalid.

A Patent of Addition shall remain in force as long as the main Patent is in force and no renewal fees are payable in respect thereof.
Any change in the ownership of a Patent must be recorded in the Register of Patents, in order to become effective with regard to a third party.
The Patent will remain in force without payment of any renewal fee for three months following the date of grant.
The first renewal fee will fall due for payment prior to expiration of three months from the date-of grant.

Thereafter, renewal fees will be payable as follows:
Prior to the end of the sixth year
Prior to the end of the tenth year
Prior to the end of the fourteenth year
Prior to the end of the eighteenth year

- **Calculated, in every case, from the date of the Patent Application.**
Particulars of the fees may be obtained from the Patent Office prior to each renewal date.
Prior to the expiration of three months from the date, of grant, it is possible to pay the renewal fee for the whole of the twenty-year period.

רחוב אגודת ספורט הפועל מס' 1, הגן הטכנולוגי מלחה,
בניין מס' 5, ירושלים, מיקוד 9695101.
טל': 972-2-5651666  פקס : 972-2-5651641
www.patents.gov.il



 

רשות הפטנטים

מדינת ישראל
משרד המשפטים

תאריך : י"ט אייר תשע"ז

15/05/2017

מספרכם : 219170

לכבוד
רייגהולד כהן ושותפיו
רחוב הברזל 26א'
רמת החייל 69710

רצ"ב תעודת חידוש פטנט מס'

## תעודת חידוש פטנט
### CERTIFICATE OF PATENT RENEWAL

Patent No.  **222965**  פטנט מס'

in the name of                                                                                    על שם


NIMBUS CONCEPTS, LLC

This is to certify that the prescribed          מאושר בזה כי האגרה הקבועה
fee has been paid and that the patent           שולמה והפטנט חודש עד לתום
been renewed until the expiry

of 6 Years from          04/05/2011          6 שנים מיום



בשם רשם הפטנטים
For Registrar of Patents



רחוב אגודת ספורט הפועל מס' 1, הגן הטכנולוגי מלחה,
בניין מס' 5, ירושלים, מיקוד 96951.
טל': 972-2-5651666 פקס : 972-2-5651641
www.patents.gov.il



2

טופס פר' 55 (2) 26.08.2010

4 Hasadna St. Talpiot
Jerusalem 93420

Tel:02-5651643 :טל
Fax: 02-5651700 :פקס

רח' הסדנא 4 תלפיות
ירושלים 93420





רשות הפטנטים

מדינת ישראל
משרד המשפטים

תאריך : כ' אייר תשע"ז

16/05/2017

מספרכם : 219170

לכבוד
ריינהולד כהן ושותפיו
רחוב הברזל 26'
רמת החייל 69710

רצ"ב תעודת חידוש פטנט מס'

## *תעודת חידוש פטנט*
### CERTIFICATE OF PATENT RENEWAL

Patent No.  **222965**  פטנט מס'

in the name of                                                                                          על שם

NIMBUS CONCEPTS, LLC

This is to certify that the prescribed            מאושר בזה כי האגרה הקבועה

fee has been paid and that the patent            שולמה והפטנט חודש עד לתום

been renewed until the expiry

of  10 Years from            04/05/2011            10 שנים מיום



בשם רשם הפטנטים
For Registrar of Patents

רחוב אגודת ספורט הפועל מס' 1, הגן הטכנולוגי מלחה,
בניין מס' 5, ירושלים, מיקוד 96951.
טל' : 5651666-2-972  פקס : 5651641-2-972
www.patents.gov.il







רשות הפטנטים

2



מדינת ישראל
משרד המשפטים

טופס פר׳ 51 (2)26.08.2010



רחוב אגודת ספורט הפועל מס׳ 1, הגן הטכנולוגי מלחה,
בניין מס׳ 5, ירושלים, מיקוד 96951.
טל׳: 972-2-5651666 פקס : 972-2-5651641



# Exhibit 10

Med Venture Management

2700 South 900 West, Ste D
Salt Lake City, UT 84119



# Invoice

| Date | Invoice # |
|------|-----------|
| 6/30/2017 | 20170002 |

| Bill To |
|---------|
| Biomerics LLC<br>2700 South 900 West, Ste D<br>Salt Lake City, UT 84119 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 6.5 | Legal Services - Legal Expense | 300.00 | ~~1,950.00~~ |
| 10.5 | Legal Services - Corp Support Expense | 300.00 | 3,150.00 |

less #375
(unrelated)

# 2,775

| | Total | $5,100.00 |

# MVM Legal Services
## 03/01/17 - 05/31/17

Bill To (Company): Biomerics
Bill Status: Bill

| Bill For (Project) | Work Performed | Date | Expense Type | Hours Worked | Total Bill Amount |
|---|---|---|---|---|---|
| | | April 1-30 | Corp | 1.25 | 375.00 |
| **Ancestry Total** | | | | **1.25** | **375.00** |
| Nimbus | Potentially billable time: Analyze status of full patent portfolio for preliminary development of global IP strategy; evaluate issued and pending claims; confirm pending status of U.S. applications and review prosecution histories of abandoned parent cases (2.75 hours) | April 1-30 | Corp | 6.50 | 1,950.00 |
| | Evaluate and revise the draft Asset Purchase Agreement, the draft Patent Assignment Agreement, and the draft Non-Compete Agreement; coordinate with Nimbus's patent counsel re additional information for inclusion in the agreements (3.75 hours) | | | | | |
| | Review and coordinate payment of annuities; coordinate with CPA Global and Knobbe Martens re payment of all annuities for the issued Israeli patent | May 1-31 | Corp | 2.75 | 825.00 |
| **Nimbus Total** | | | | **9.25** | **2,775.00** |
| | | May 1-31 | Legal | 3.50 | 1,050.00 |
| | | April 1-30 | Legal | 3.00 | 900.00 |
| | | | | **6.50** | **1,950.00** |
| **Grand Total** | | | | **17.00** | **5,100.00** |

**Med Venture Management**
2700 South 900 West, Ste D
Salt Lake City, UT  84119
scoster@biomerics.com

# Invoice

| BILL TO | SHIP TO |
|---|---|
| Biomerics LLC | Biomerics LLC |
| 2700 South 900 West, Ste D | 2700 South 900 West, Ste D |
| Salt Lake City, UT 84119 | Salt Lake City, UT 84119 |

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 20170009 | 06/30/2017 | $1,500.00 | 07/30/2017 | Net 30 | |

**SHIP DATE**
06/30/2017

| ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|
| **Legal Services**<br>Legal Expense | 0.50 | 300.00 | 150.00 |
| **Legal Services**<br>Corp Support | 4.50 | 300.00 | 1,350.00 |

| | | |
|---|---|---|
| | BALANCE DUE | **$1,500.00** |

# MVM Legal Services
## 06/01/17 - 06/30/17

| Bill Status | Bill |
| Bill To (Company) | Biomerics |

| Bill For (Project) | Work Performed | Date | Expense Type | Hours Worked | Total Bill Amount |
|---|---|---|---|---|---|
| | | | | 0.50 | 150.00 |
| Nimbus | Review email from Jeneth (Medistar) requesting status report of Nimbus' patent portfolio in Southeast Asian countries; analyze the patent portfolio and prepare email in response to same | 6/2/2017 | Corp | 0.75 | 225.00 |
| | Analyze the issued claims in Australia and Hong Kong; analyze the pending Hong Kong, European, and Chinese applications; telephone conference with Jeneth (Medistar) and Travis Sessions re Southeast Asia IP strategies | 6/12/2017 | Corp | 3.75 | 1,125.00 |
| Nimbus Total | | | | 4.50 | 1,350.00 |
| Grand Total | | | | 5.00 | 1,500.00 |

**Med Venture Management**
2700 South 900 West, Ste D
Salt Lake City, UT  84119
scoster@biomerics.com

# Invoice

| BILL TO | SHIP TO |
|---|---|
| Biomerics LLC | Biomerics LLC |
| 2700 South 900 West, Suite D | 2700 South 900 West, Suite D |
| Salt Lake City, UT  84119 | Salt Lake City, UT  84119 |

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| Pro Forma 01 | 09/30/2017 | $75.00 | 10/30/2017 | Net 30 | |

| ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|
| **Legal Services**<br>Nimbus - Review the invoice from FB Rice re the filing of the Nimbus divisional application in Australia and also detailing the abandonment of the application; prepare email to Travis and Andy Montero re the same | 0:15 | 300.00 | 75.00 |

BALANCE DUE

# $75.00

# Exhibit 11



**#2**

**G-MED North America, Inc**
3930 Knowles Ave. Suite 306
KENSINGTON Maryland 20895
U.S.A

## *INVOICE*

Invoice# 2017-03-38

| Bill To |
| --- |
| **BIOMERICS** |
| 2700 South 900 West, Suite D |
| Salt Lake City, UT 84119 |
| USA |

| Date | Terms | Due Date | P.O.# |
| --- | --- | --- | --- |
| March 31, 2017 | Net 30 | April 30, 2017 | Proposal#: P129280-QA6 |

| Item | Description | Qty | Rate | Amount |
| --- | --- | --- | --- | --- |
| Surveillance 2 Audit | Device(s) concerned: Electrosurgical radiofrequency electrodes for coagulation and selective nerve denervation in the orthopedic, arthroscopic and neurosurgical field | 1.00 | 15,783.00 | 15,783.00 |
| Expenses | Mohamed ALSAADI February 28 - March 03, 2017 To Be Invoiced Separately | 1.00 | 0.00 | 0.00 |

Checks payable to:

G-MED North America, Inc.
3930 Knowles Ave. Suite 306
Kensington, MD 20895
USA

Wire transfer info:

Silicon Valley Bank, Santa Clara
3003 Tasman Drive, Santa Clara, CA 95054
SWIFT ID: SVBKUS6S
ABA#: 121140399
For Credit to: LNE GMED NA
Account #: 3300482271

| | |
| --- | --- |
| Sub Total | 15,783.00 |
| **Total** | **$15,783.00** |
| **Balance Due** | **$15,783.00** |

**Terms & Conditions**

1. If applicable, please remit any sales tax to appropriate state tax office
2. Please refer to sales terms and conditions for applicable fees.



**G-MED North America, Inc**
3930 Knowles Ave. Suite 306
KENSINGTON Maryland 20895
U.S.A

## *INVOICE*

Invoice# 2017-03-50

| Bill To |
| --- |
| **BIOMERICS**<br>2700 South 900 West, Suite D<br>Salt Lake City, UT 84119<br>USA<br>, |

| Date | Terms | Due Date | P.O.# |
| --- | --- | --- | --- |
| March 31, 2017 | Net 30 | April 30, 2017 | Proposal#: P129280-QA6 |

| Item | Description | Qty | Rate | Amount |
| --- | --- | --- | --- | --- |
| Expenses | Mohamed ALSAADI<br>February 28 - March 03, 2017<br>Ref.: Invoice#2017-03-38 | 1.00 | 1,855.90 | 1,855.90 |

Checks payable to:

| | |
| --- | --- |
| Sub Total | 1,855.90 |
| Total | $1,855.90 |
| Balance Due | $1,855.90 |

G-MED North America, Inc.
3930 Knowles Ave. Suite 306
Kensington, MD 20895
USA

Wire transfer info:

Silicon Valley Bank, Santa Clara
3003 Tasman Drive, Santa Clara, CA 95054
SWIFT ID: SVBKUS6S
ABA#: 121140399
For Credit to: LNE GMED NA
Account #: 3300482271

**Terms & Conditions**

1. If applicable, please remit any sales tax to appropriate state tax office
2. Please refer to sales terms and conditions for applicable fees.

**Andy Montero**

| | |
|---|---|
| **From:** | Jake Wakley |
| **Sent:** | Tuesday, May 02, 2017 1:34 PM |
| **To:** | Andy Montero; Travis Sessions |
| **Subject:** | RE: Final Nimbus Invoice |
| **Attachments:** | 2017-03-50.pdf; 2017-03-38.pdf |

Andy,

The only QA/RA fees would be related to the CE Mark for Nimbus. The cost of the most recent surveillance audit was $17,639 but that includes the Biomerics 13485 certification so I would only allocate 50% to Nimbus. Let me know if you need any more info. The associated invoices are attached.

Jake

**From:** Andy Montero
**Sent:** Wednesday, April 12, 2017 7:51 PM
**To:** Travis Sessions <tsessions@biomerics.com>; Jake Wakley <jwakley@biomerics.com>
**Subject:** RE: Final Nimbus Invoice

Jake,
Can you please send me the quality and regulatory fee details? I'll prepare the total summary and invoice

Thanks,

**Andy Montero**
**Finance**
Office Phone:  801-355-2705 Ext. 105
Office Fax:     801-355-3045



2700 South 900 West Suite D
Salt Lake City, Utah
84119

TEL 801.355.2705
FAX 801.355.3045
www.biomerics.com

**From:** Travis Sessions
**Sent:** Saturday, April 08, 2017 12:41 PM
**To:** Andy Montero <amontero@biomerics.com>; Jake Wakley <jwakley@biomerics.com>
**Subject:** Final Nimbus Invoice

We need to prepare a final Nimbus invoice to be paid at the closing. We need to include the following:

- Past Due
- Interest Payments
- Quality and Regulatory Fees – Jake has some new ones

Please prepare a final invoice.  We will not present it until we have everyone committed.